**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-30266 |
| *Plaintiff-Appellee*, | D.C. No. 6:18-cr-00351-AA-1 |
| v. | |
| KEITH ATHERTON, AKA Keith James Atherton, AKA John Doe, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted December 8, 2023
Portland, Oregon

Filed July 3, 2024

Before: Marsha S. Berzon, Jacqueline H. Nguyen, and Eric
D. Miller, Circuit Judges.

Opinion by Judge Berzon;
Dissent by Judge Miller

## SUMMARY[*]

### Criminal Law

The panel affirmed a sentence imposed on Keith Atherton, whose plea agreement contained an appeal waiver with certain exceptions.

Atherton contends that the district court violated his due process rights during sentencing by relying upon false or unreliable information.

The panel held that a due process challenge to sentencing, like Atherton's, falls within the appeal waiver limitation set forth identified in *United States v. Wells*, 29 F.4th 580 (9th Cir. 2022), for "a challenge that the sentence violates the Constitution." The panel rejected the government's contention that the *Wells* exception is limited to constitutional claims targeting the substantive terms of the sentence.

Reviewing for plain error, the panel held that Atherton's due process rights were not violated. The panel concluded that Atherton did not demonstrate that it is clear or obvious that the challenged information was patently false or unreliable or that the court relied upon the information in imposing sentence.

Dissenting, Judge Miller would hold Atherton to his agreement and dismiss the appeal. Judge Miller wrote that the phrase "any grounds" in Atherton's appeal waiver encompasses alleged due-process violations at sentencing;

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and that under the rule adopted by the majority, routine challenges to factual findings at sentencing can be recast as due-process arguments that can go forward in the face of an appellate waiver, at least if the waiver does not contain a sufficiently explicit reference to due-process claims.

**COUNSEL**

Sarah Barr (argued), Assistant United States Attorney; Suzanne Miles, Assistant United States Attorney, Criminal Appeals Section Chief; Natalie K. Wight, United States Attorney, United States Department of Justice, Office of the United States Attorney, Portland, Oregon; Jeffrey S. Sweet, Assistant United States Attorney, United States Department of Justice, Office of the United States Attorney, Eugene, Oregon; for Plaintiff-Appellee.

Elizabeth G. Daily (argued), Assistant Federal Public Defender, Federal Public Defender's Office, Portland Oregon, for Defendant-Appellant.

## OPINION

BERZON, Circuit Judge:

Defendant Keith Atherton pleaded guilty pursuant to a plea agreement to one count of using or attempting to use a minor to produce a visual depiction of sexually explicit conduct. In the plea agreement, Atherton waived his appeal rights, with certain exceptions. The district court imposed a statutory maximum sentence of 30 years. On appeal, Atherton contends that the district court violated his due process rights during sentencing by relying upon false or unreliable information. Our primary question is whether a due process challenge to sentencing, like Atherton's, falls within the appeal waiver limitation identified in *United States v. Wells* for "a challenge that the sentence violates the Constitution." 29 F.4th 580, 587 (9th Cir. 2022). We hold that it does. Here, however, Atherton's due process rights were not violated and so we affirm the district court.

### I. Factual and Procedural Background

In July 2018, a federal agent discovered that Atherton was sharing and distributing child pornography and child exploitation material on a video conferencing platform. The content included sexually explicit images and videos of Atherton and a male toddler, referred to throughout the proceedings as "Male Victim 1" or "MV1." Pursuant to a warrant, investigators seized Atherton's electronic devices, including his computer.

A forensic analysis of Atherton's devices revealed thousands of videos and more than 10,000 images depicting child sexual exploitation, as well as a guide on how to groom and sexually abuse children. Law enforcement agents also

recovered sexually exploitative images and videos Atherton had produced of MV1, and videos in which Atherton expressed his desire to sexually abuse the child. Atherton's chat history contained messages describing the abuse he had inflicted on MV1.

MV1's parents were Atherton's long-time friends. Atherton moved in with the family when he needed a place to live. Occasionally, he babysat the child, who was three at the time. Atherton used methamphetamine on a daily basis from 2012 to the time of his arrest.

After the discovery of the material on his electronic devices, Atherton was indicted on several charges. He pleaded guilty pursuant to a plea agreement to one count of using or attempting to use a minor to produce a visual depiction of sexually explicit conduct, in violation of 18 U.S.C. §§ 2251(a) and (e). The government agreed to dismiss the remaining counts.[1] The plea agreement contained the following appeal waiver:

> Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that: (1) the sentence imposed exceeds the statutory maximum, or (2) the Court arrives at an advisory sentencing guideline range by applying an

---

[1] The Coos County District Attorney's Office agreed that it would not prosecute Atherton for charges arising from the investigation, provided that he pleaded guilty and received a sentence of at least 15 years imprisonment.

> upward departure under the provisions of
> Guidelines Chapters 4 or 5K.

Atherton's pre-sentence report (PSR) calculated a Guidelines recommended term of 360 months, reflecting the statutory maximum sentence. 18 U.S.C. § 2251(e). But for the statutory maximum, the recommended Guidelines sentence would have been life. U.S.S.G. § 5G1.1(a). The government sought a statutory maximum sentence of 360 months, pointing to Atherton's "strong sexual interest in children, his preoccupation with child pornography, his compulsive behavior and long-term addiction to methamphetamine," and the consequent need to protect the community. The defense requested the mandatory minimum sentence, 15 years. 18 U.S.C. § 2251(e).

Before the hearing, the defense submitted a Psycho-Sexual Evaluation and Risk Assessment report authored by an expert in the field, Katherine Gotch. Gotch reviewed Atherton's personal history and the results of multiple risk assessments. She concluded that Atherton "currently presents as a medium risk for general criminal recidivism and above average risk for future sexual crimes." The report identified certain factors influencing his "amenability" and "responsivity" to treatment. It also indicated that "Mr. Atherton would likely be managed adequately in the community with continued sobriety and the appropriate supports," but stated that "this is not an option for Mr. Atherton at this time."

After hearing testimony by Gotch, statements by the victim's father and the defendant, and argument from both parties, the district court imposed a sentence. Commenting upon the expert testimony, the court acknowledged the importance of evidence-based sentencing, but stated that

"we are in an area of neuroscience and behavioral sciences with issues related to sex offenses that I would say is embryotic." The court then noted that resources and support for community-based programs to assist sex offenders were "dwindling," and that "the community right now does not have the adequate needs to manage" Atherton's treatment, especially in light of his longstanding addiction. Finally, the court commented upon "[t]he betrayal of trust" inherent in Atherton's abusing a child placed in his care, noting that the court and also the defendant—who was using methamphetamine at the time—"may not even know" what happened "while [MV1's parents] were gone."

After recounting the goals of sentencing under 18 U.S.C. § 3553(a), the court imposed a 360-month sentence, with lifetime supervision upon release. She noted that the sentence reflected the need to incapacitate Atherton while his risk of reoffending was high, to account for the "lifetime effect[s]" upon the victim, and to protect the community. She also expressed hope that "[w]e will have better resources and better technologies to address these issues" when Atherton is released.

Atherton appealed, arguing that the district court violated his due process rights by relying on false or unreliable information during sentencing.[2]

---

[2] Atherton filed his notice of appeal outside the 14-day window provided by Federal Rule of Appellate Procedure 4(b), and outside the extended window granted by the district court. Under the circumstances— including the withdrawal of appointed counsel and the failure of the district court to file the appeal notice on the defendant's behalf—the government does not object to the timeliness of the appeal. Federal Rule of Appellate Procedure 4(b), which imposes timeliness requirements for

## II. Discussion

### a.  Appeal Waiver

We must first address whether a due process challenge to a sentence falls within an exception to an otherwise valid appeal waiver. We review de novo whether a defendant has waived his right to appeal. *United States v. Spear*, 753 F.3d 964, 967 (9th Cir. 2014).[3]

Atherton does not dispute that his plea agreement, including its appeal waiver, was knowing and voluntary. *See id.* Nor does he assert that his appeal falls within one of the two exceptions identified in the waiver itself, for sentences exceeding the statutory maximum or based upon a guideline range resulting from the application of an upward departure under Guidelines Chapters 4 or 5K. Atherton's contention, instead, is that because he raises a constitutional challenge to his sentence, his appeal falls within the exception described in *United States v. Wells* to an otherwise valid appeal waiver. 29 F.4th at 584–85.

### i.  The *Wells* Exception

*Wells* clarified the scope of an earlier case, *United States v. Bibler*, which held that "[a]n appeal waiver will not apply if . . . the sentence violates the law." 495 F.3d 621, 624 (9th Cir. 2007). *Bibler* defined an illegal sentence as one that "exceeds the permissible statutory penalty for the crime *or violates the Constitution*." *Id.* (emphasis added).

---

criminal appeals, is not jurisdictional and therefore "forfeitable if not invoked." *United States v. Sadler*, 480 F.3d 932, 934 (9th Cir. 2007).

[3] *United States v. Jacobo Castillo* held that an appeal waiver contained within "a valid guilty plea does not deprive the court of jurisdiction" to hear an appeal. 496 F.3d 947, 949–50 (9th Cir. 2007) (en banc).

Synthesizing our post-*Bibler* opinions addressing the applicability of appeal waivers to constitutional challenges, *Wells* concluded that:

> a waiver of the right to appeal a sentence does not apply if (1) the defendant raises a challenge that the sentence violates the Constitution; (2) the constitutional claim directly challenges the sentence itself; and (3) the constitutional challenge is not based on any underlying constitutional right that was expressly and specifically waived by the appeal waiver as part of a valid plea agreement.

*Id.* at 587.**[4]**

The government contends that the *Wells* exception is limited to constitutional claims targeting the substantive terms of the sentence, and that Atherton's due process challenge does not fall within that category. *Wells* does

---

[4] The dissent in *Wells* argued that *Bibler* was "entirely irreconcilable" with an earlier case, *United States v. Joyce*, 357 F.3d 921 (9th Cir. 2004). *Joyce* dismissed a First Amendment challenge to special conditions of release, relying for the dismissal on a valid appeal waiver. *Wells*, 29 F.4th at 593 (Bea, J., dissenting). But, as the *Wells* majority noted, *Joyce* "did not address the issue of whether an appeal waiver applies to challenges that a sentence is unconstitutional," because the issue was not raised by the parties. *Id.* at 585. Instead, the defendant in *Joyce* argued that the special conditions of release were not part of the sentence, and therefore not subject to the waiver. *Id.* at 585–86 (citing *Joyce*, 357 F.3d at 922). The *Wells* majority concluded on that basis that *Joyce* is not "clearly irreconcilable" with *Bibler*, or with later decisions directly addressing the constitutional exception to appeal waivers. *Id.* at 586 (quoting *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012)).

contain language stating that "the *Bibler* exception [is] limited to challenges that the terms of the sentence itself are unconstitutional,"[5] a locution that, in isolation, could perhaps be understood as indicating that the constitutional challenge must be substantive rather than procedural. *Id.* at 587. But a challenge to a sentence that was imposed unconstitutionally—for example, an argument that the defendant was not represented by counsel, or that the sentence was chosen for racially discriminatory reasons—is also a challenge to the terms of the sentence. Such a challenge asserts that the terms of the sentence are entirely invalid because they were unconstitutionally imposed and must be reconsidered in a constitutionally proper proceeding.

Notably, in the key language summarizing its holding, quoted above, *Wells* did not refer to the "terms of the sentence," but instead stated that the exception encompasses any situation in which "the constitutional claim directly challenges the sentence itself." *Id.* That language includes a procedural constitutional challenge to a sentence, as opposed to a contest to the sentence on the ground that the conviction was invalid.

Examples given in the *Wells* opinion confirm that understanding of the opinion. *Wells* stated that "[t]he exception does not allow any constitutional challenges *per se*, such as the Sixth Amendment rights to a speedy and public trial or right to confront witnesses, which are not challenges that *the sentence* is unconstitutional." *Id.* at 587 (emphasis added). *Wells* also pointed to *United States v.*

---

[5] The constitutional challenges raised in *Wells* challenged certain special conditions of the defendant's sentence on vagueness, First Amendment, and nondelegation grounds. *Wells*, 29 F.4th at 588.

*Shehadeh* as an example of a case that properly enforced an appeal waiver when a defendant raised a constitutional challenge based upon the Sixth Amendment right to a public trial. 962 F.3d 1096, 1102 (9th Cir. 2020).**[6]**

*Wells* drew a dividing line between constitutional violations affecting only the sentence and those affecting the conviction, not between violations concerning the substance of a sentence and those involving the procedure via which it was imposed.

### ii. Waiver of Procedural Challenges

Consistent with that understanding, we have repeatedly permitted defendants to raise due process challenges to their sentence despite the existence of a valid appeal waiver. For example, in *United States v. Odachyan*, we held that a due process and equal protection challenge to the judge's alleged anti-immigrant bias at sentencing was not precluded by an appeal waiver. 749 F.3d 798, 801 (9th Cir. 2014). Although the plea agreement "by its terms [did] not preclude an argument that the sentence is unconstitutional," we specified that "we have jurisdiction to consider a claim of constitutional error in any event." *Id.* (citing *Bibler*, 495 F.3d at 624). Similarly, *United States v. Baramdyka* stated that appeal waivers are inapplicable where the defendant contends "that the sentence was the result of discriminatory animus or any other similar form of due process violation." 95 F.3d 840, 844 (9th Cir. 1996). And again, in *United States v. Ornelas*, we assessed the defendant's constitutional due process challenge to being sentenced in absentia, a challenge

---

[6] There is no indication in *Shehadeh* that the public trial appeal was limited to the sentencing hearing.

directed at the sentencing process, not its terms. *See* 828 F.3d 1018, 1020–21 (9th Cir. 2016).

We have also allowed other types of constitutional arguments to proceed on appeal despite the existence of an appeal waiver, including those challenging informational inputs to the court's sentencing decision. For example, in *United States v. Torres*, we declined to enforce an appeal waiver where the district court enhanced the defendant's offense level under an unconstitutionally vague provision of the Sentencing Guidelines. 828 F.3d 1113, 1123, 1125 (9th Cir. 2016).

More recently, in *Crespin v. Ryan*, 46 F.4th 803, 809–10 (9th Cir. 2022), we held that a defendant had not waived his right to pursue a post-conviction, Eighth Amendment challenge to his sentence, predicated on *Miller v. Alabama*, 567 U.S. 460 (2012). *Crespin* clarified that *Miller* and its progeny require the district court to "follow a certain process—considering an offender's youth and attendant characteristics—before imposing" a life without parole sentence for a juvenile offender. *Id.* at 808 (quoting *Jones v. Mississippi*, 593 U.S. 98, 101 (2021)). The defendant in *Crespin* had been sentenced without an individualized hearing because the plea agreement stipulated a life without parole sentence. *Id.* at 810–11. Concluding that the appeal waiver did not apply to the defendant's constitutional claim, *Crespin* quoted the conditions set out in *Wells*. *Id.* at 809. *Crespin* thus recognized that the *Wells* exception includes constitutional challenges to the process by which a sentence is imposed, and is not limited to appeals challenging the substance of a sentence.

Other Circuits similarly decline to enforce appeal waivers where the defendant appeals on the ground that the

sentencing court relied on a constitutionally impermissible procedure or factor. For example, the D.C. Circuit has held that "a waiver [should not] be enforced if the sentencing court's failure in some material way to follow a prescribed sentencing procedure results in a miscarriage of justice." *United States v. Guillen*, 561 F.3d 527, 531 (D.C. Cir. 2009). Such procedural deficiencies exist if "the district court utterly fails to advert to the factors in 18 U.S.C. § 3553(a)," or if it relies on "constitutionally impermissible factor[s]" such as race or religion. *Id.*; *see also United States v. Teeter*, 257 F.3d 14, 25 n.9 (1st Cir. 2001) (noting that an appeal waiver would not be applied if it was a miscarriage of justice, for example, where an appellant argues that their sentence was based on race or ethnicity); *United States v. Johnson*, 347 F.3d 412, 415 (2d Cir. 2003) (allowing the defendant to raise, despite a valid appeal waiver, a due process argument that the district court extended his term of probation on account of the defendant's indigency); *United States v. Brown*, 232 F.3d 399, 403 (4th Cir. 2000) (excluding from appeal waivers challenges that the sentence was "based on a constitutionally impermissible factor such as race"); *United States v. Hicks*, 129 F.3d 376, 377 (7th Cir. 1997) (impermissible factors such as race or gender); *United States v. Michelsen*, 141 F.3d 867, 872 n.3 (8th Cir. 1998) ("constitutionally impermissible factor such as race"); *United States v. Hahn*, 359 F.3d 1315, 1327 (10th Cir. 2004) ("impermissible factor such as race").

One additional conceptual point justifies applying the *Wells* exception to procedural violations occurring during sentencing. There is a key difference between a waiver of the right to appeal aspects of sentencing and a waiver of trial or pre-trial rights. Where a defendant waives a trial right— including the right to a jury trial, to confront witnesses, to

remain silent, and to testify—"the act of waiving the right
occurs at the moment the waiver is executed." *United States
v. Melancon*, 972 F.2d 566, 571 (5th Cir. 1992) (Parker, D.J.,
specially concurring). With regard to waiving the right to a
jury trial, for example, there can be no constitutional
violation arising from the trial, because it will not occur.
Furthermore, what is waived is a known concept—"[the
defendant] knows the nature of the crime to which he or she
pleads guilty," as well as the trial rights he is foregoing. *Id.*

When waiving the right to appeal a sentence in a plea
agreement entered into before sentencing, on the other hand,
the defendant waives the right to appeal constitutional
violations that may—but hopefully will not—happen in the
future. "This right cannot come into existence until after the
judge pronounces sentence; it is only then that the defendant
knows what errors the district court has made—i.e., what
errors exist to be appealed, or waived." *Id.* at 572 (emphasis
omitted). A wholesale waiver of the right to appeal a
sentence would therefore allow a court unpredictably to
violate a defendant's constitutional rights with impunity. *See
also Teeter*, 257 F.3d at 25 (cautioning that because waivers
of the right to appeal a sentence "are made before any
manifestation of sentencing error emerges, appellate courts
must remain free to grant relief from them in egregious
cases").[7]

---

[7] In *United States v. Navarro-Botello*, the defendant argued that "his plea
was involuntary because it is logically impossible to make a knowing
and intelligent waiver of unknown rights, and a defendant cannot know
or understand what appellate issues may arise until after sentencing." 912
F.2d 318, 320 (9th Cir. 1990). We rejected that argument, concluding
that Navarro-Botello had voluntarily given up the right to appeal in

Another way of looking at the matter is that, given that the sentencing proceeding has not yet occurred at the time an appeal waiver is entered, a presentencing waiver should not be taken as waiving the right to a constitutionally imposed sentence absent a clear statement to that effect, including specifying the constitutional rights waived. That, in essence, is what *Wells* held, as it permitted enforcement of an appeal waiver of "any underlying constitutional right that was expressly and specifically waived." 29 F.4th at 587. That limitation to clearly enunciated, specific waivers avoids providing carte blanche to sentencing courts to trample constitutional rights during the all-important sentencing proceedings, and at the same time assures that the defendant's quid pro quo for the prosecutor's plea agreement concessions is limited to specific circumstances contemplated in advance.

The concern that a defendant should not—absent a clear statement to the contrary—be taken to waive the right to unknown and unanticipated constitutional violations occurring during sentencing applies equally to procedural and substantive violations. There is no basis for limiting the *Wells* exception to one and not the other.

### iii. Whether Atherton's Challenge Falls Within the *Wells* Exception

Atherton's appeal meets all three conditions identified in *Wells*. First, his assertion that the district court violated his due process rights by relying upon false or unreliable

---

exchange for the certainty derived from a plea agreement with a set sentence. *Id.* at 320–21. That outcome does not control here. Atherton concedes that his appellate waiver was voluntary. Still, *Bibler* and its progeny make clear that there are exceptions to the enforcement of knowing and voluntary appeal waivers.

16          USA v. ATHERTON

information at sentencing is "a challenge that the sentence violates the Constitution." *Wells*, 29 F.4th at 587. Second, the claim "directly challenges the sentence itself," rather than any features of the trial or pre-trial proceedings. *Id.* And third, the challenge is not based on a constitutional right that Atherton expressly waived. *See id.* Similar to the waiver in *Wells*, Atherton's plea agreement waived the right to appeal from *any aspect* of the conviction and sentence on *any grounds*, subject to two exceptions not applicable here. *Id.* at 584. Atherton's due process challenge to the information relied upon in sentencing therefore falls within the *Wells* exception.

### b. Due Process in Sentencing

#### i. Order of Analysis

Before reaching the merits of the due process issue raised, an explanation as to the order of the discussion is in order. Our cases have frequently analyzed the merits of the constitutional challenge before determining whether the appeal waiver applies. In *Ornelas*, for example, we first addressed whether the sentence was lawful and, concluding that it was, enforced the appeal waiver. 828 F.3d at 1021–23. In *Torres*, we concluded that the sentence was "illegal," and then stated that the waiver did not bar the appeal. 828 F.3d at 1125; *see also United States v. Lo*, 839 F.3d 777, 790–95 (9th Cir. 2016) (rejecting four arguments as to why the forfeiture order constituted an illegal sentence before upholding the appeal waiver); *United States v. Watson*, 582 F.3d 974, 981, 985–88 (9th Cir. 2009) (assessing the merits of the defendant's sentencing challenge before concluding that the exception for illegal sentences did not apply). This habit may trace back to thinking of appeal waivers as depriving the appellate court of jurisdiction, even though we

have held that is not so. *See Jacobo Castillo*, 496 F.3d at 949–50.**[8]**

In *Wells*, however, we stated that a waiver does not apply if the defendant *raises* a constitutional challenge, and concluded that three of Wells's constitutional challenges "survive[d] the appeal waiver." 29 F.4th at 587–88; *see also United States v. Schopp*, 938 F.3d 1053, 1058 (9th Cir. 2019) (stating that because the defendant's "appeal goes to the legality of his sentence, it is permitted despite his appeal waiver"). Because an appeal waiver is not jurisdictional, *see supra* note 3, it is a purely formalistic difference whether we say that the appeal waiver does not apply but the defendant loses on the merits or that, because he loses on the merits, the waiver applies.

---

[8] Decisions issued before *Jacobo Castillo* generally dismissed the appeal after enforcing a valid waiver. *See, e.g.*, *United States v. Cardenas*, 405 F.3d 1046, 1048 (9th Cir. 2005) (dismissing an appeal after concluding that the sentence was not illegal); *United States v. Jeronimo*, 398 F.3d 1149, 1157 (9th Cir. 2005) (enforcing an appeal waiver and dismissing for lack of jurisdiction); *Joyce*, 357 F.3d at 925 (dismissing for lack of jurisdiction after concluding that the defendant validly waived his appeal rights). *But see United States v. Martinez*, 143 F.3d 1266, 1272 (9th Cir. 1998) (affirming after concluding that the defendant was bound by an appeal waiver). Notably, in the same month *Jacobo Castillo* was filed, the *Bibler* opinion was amended to remove a reference to the court lacking jurisdiction to consider the appeal unless an exception to the appeal waiver applied and to alter the disposition of the case from dismissal to affirmance. *Bibler*, 495 F.3d at 622. Opinions issued after *Jacobo Castillo* nevertheless continued to dismiss an appeal after rejecting arguments concerning the illegality of a sentence on the merits and enforcing an appeal waiver. *See, e.g.*, *Ornelas*, 828 F.3d at 1023; *Lo*, 839 F.3d at 795; *Watson*, 582 F.3d at 988. We follow the approach of the *Bibler* court in affirming the district court on the merits, rather than dismissing for lack of jurisdiction.

We note as well that as we are applying plain error review*, see infra* p. 18–19, it would be especially backwards to leave the waiver question until the end of our analysis. Our holding that there was no plain error does not establish that the procedure used *was* constitutional, and so cannot itself be a predicate for declining to enforce the waiver of appeal. Instead, the basis for not enforcing the waiver of appeal is that a constitutional challenge was raised, whatever the outcome of that challenge.

Here, we have already concluded that Atherton's due process challenge to his sentence falls within the exception to a valid appeal waiver for unconstitutional sentences. For clarity, to avoid circularity, and to conform the form to reality, we prefer, as in *Wells*, to recognize at this juncture that the appeal waiver is inapplicable and resolve the case on the merits. *See Wells*, 29 F.4th at 587 ("[W]e must address the constitutional challenges on the merits.").

### ii.    Standard of Review

Atherton had an opportunity to object to the grounds of his sentence before the conclusion of the hearing and did not do so.**[9]** So we review his constitutional challenge to his sentence for plain error. *United States v. Johnson*, 979 F.3d 632, 636 (9th Cir. 2020); *see also United States v. Vanderwerfhorst*, 576 F.3d 929, 934–36 (9th Cir. 2009) (applying plain error review to a claim that the district court violated a defendant's due process rights by basing its

---

[9] Contrary to Atherton's assertions, he did not preserve his objection simply by presenting what he considers to be reliable information to the court. Notably, defense counsel did raise a different objection at the close of sentencing—that the court had inaccurately characterized search results identified in Atherton's internet history as search terms—and equally could have objected on the grounds raised here.

sentence upon unreliable information). To establish plain error, Atherton must show that "(1) there was an error, (2) the error is clear or obvious, (3) the error affected his substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 979 F.3d at 636.

"To succeed on a claim that a district court violated the Due Process Clause by imposing a 'sentence founded at least in part upon misinformation of constitutional magnitude,' a defendant 'must establish the challenged information is (1) false or unreliable, and (2) demonstrably made the basis for the sentence[.]'" *United States v. Hill*, 915 F.3d 669, 674 (9th Cir. 2019) (citations omitted) (first quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972), and then quoting *Vanderwerfhorst*, 576 F.3d at 935–36). The first factor is met if the challenged information is "improper, inaccurate, or mistaken," or if the district court makes "unfounded assumptions or groundless inferences." *United States v. Borrero-Isaza*, 887 F.2d 1349, 1352 (9th Cir. 1989). "For the second factor, the court must have 'made it abundantly clear that (the challenged information) was the basis for its sentence.'" *Hill*, 915 F.3d at 674 (quoting *Farrow v. United States*, 580 F.2d 1339, 1359 (9th Cir. 1978)).

In contending that the district court violated his due process rights by relying on false or unreliable information in imposing his sentence, Atherton points to: (1) the court's statements concerning the state of research on sex offenses; (2) the availability of community-based treatment resources; and (3) the possibility that the defendant committed other offenses against MV1. Examining each category of information identified, we conclude that Atherton has not demonstrated that it is "clear or obvious" that the challenged

information was patently false or unreliable or that the court relied upon the information in imposing sentence.

### iii.   Sex Offense Research

First, it is not plain that the district court relied on false or unreliable information when it commented on the efficacy of sex offense recidivism treatment.

After considering the defense expert's report and testimony, the court stated:

> [W]e are in an area of neuroscience and behavioral sciences with issues related to sex offenses that I would say is embryotic. We don't have that much information. I listened very carefully, and I have all the reports. I strongly suggest that your . . . expert in this case has great commitment to being a part of getting better information, better solutions, but I think she would even have to acknowledge that we are at the very beginning stage of trying to add[ress] these issues.

After imposing the thirty-year sentence, the court expressed "hope" that "when [Atherton is] eventually released from custody that we will have progressed as a criminal justice system, neuroscience, behavioral science using contemporary sciences and neurosciences to figure out how to best address this issue."[10] Atherton contends that these

---

[10] Contrary to the defendant's argument, there is no indication that the court "impos[ed] or lengthen[ed] [his] prison term to promote [his] rehabilitation" in violation of *Tapia v. United States*, 564 U.S. 319, 332

statements contradict the expert report and testimony and lack a foundation in the record.

Not so, or at least, not plainly so. Gotch, the defense expert, made only general comments concerning the efficacy of treatment for sex offenders. Her report indicated that Atherton's amenability to treatment was "good," but, in context, that comment referred to his willingness to participate rather than the likelihood of the treatment's success. Gotch also testified that "once caught, the majority of individuals convicted of sexual crimes desist with appropriate intervention," but she did not indicate precisely what "interventions" are "appropriate," nor how reliably sex offense treatment reduces recidivism for individuals with Atherton's specific characteristics. Gotch also did not suggest that the research provides any method for determining whether Atherton himself would respond to specific treatments. Given the general nature of Gotch's report and testimony, the district court's observations concerning the state of research on sex offenses and offenders are not contradicted by the expert's statements— or, again, at least not obviously so.

Nor did the court "make unfounded assumptions or groundless inferences in imposing sentence." *Borrero-Isaza*, 887 F.2d at 1352. In *United States v. Autery*, we affirmed the substantive reasonableness of a sentence, including the court's evaluation of the efficacy of out-patient psychiatric treatment, where the district court applied its "unique

_____

(2011) (citing 18 U.S.C. § 3582(a)). Unlike in *Tapia*, the district court did not calculate the defendant's sentence to ensure that he could complete an in-prison treatment program. *Id.* at 335. Rather, the district court considered the absence of rehabilitative resources outside of prison as one factor in its sentencing decision.

familiarity with the defendant, the case's circumstances, and
numerous other cases like it." 555 F.3d 864, 877 (9th Cir.
2009). The judge here, it appears, was similarly justified in
evaluating the expert report and recommendations in light of
her extensive experience with sex-offense cases and the
impacts upon victims of sexual assault, developed while
practicing family law and serving on a state juvenile court,
and sitting for more than twenty years as a federal judge.

### iv.    Community-Based Treatment Resources

Second, the district court did not plainly implicate
Atherton's due process rights by observing that there were
insufficient community-based treatment resources to meet
his needs outside of prison.

The expert report stated that:

> While Mr. Atherton would likely be managed
> adequately in the community with continued
> sobriety and the appropriate supports (e.g.,
> community supervision in conjunction with
> specialized treatment programming and other
> forms of external monitoring), despite his
> above average risk profile, it is understood
> this is not an option for Mr. Atherton at this
> time.

The defendant contends that, in stating that community
treatment was "not an option . . . at this time," Gotch merely
acknowledged that Atherton faced a mandatory minimum
15-year sentence. At sentencing, however, Gotch noted that
Atherton's    behavior    was    "exacerbated    by    the
methamphetamine use," and that while the drug use was "not
an excuse, . . . it is an inhibitor . . . which is why in the report

one of the recommendations I stated was, while he could likely be managed in the community . . . with adequate so[br]iety and appropriate controls, what I also noted is that's not an option for him at this point."

In response to Gotch's testimony, the district noted the closure of a nearby residential reentry center and stated that "the community right now does not have the adequate needs to manage [the defendant], especially with an addiction that goes back as long as [his]." Those statements are entirely consistent with Gotch's testimony, which did not attest to the availability of the necessary community resources and acknowledged that successful treatment for Atherton was conditioned on his sobriety. Nor was it unreasonable for the district court judge to rely on her familiarity with the re-entry process in concluding that in the federal system "resources have been dwindling, unraveling, and not funded to the extent we have a demand and a need for it."

#### v.    Additional Sex Offenses

Third, Atherton has not shown that the district court based his sentence upon speculation that he had committed additional, unreported sex offenses against MV1.

In discussing Atherton's relationship to MV1's parents, the court stated:

> I'm actually confident that there is no certainty that when they were entrusting you with his behavior and his supervision, when they ran those little errands, only God knows what happened while they were gone. They have what was captured. You may not even

> know because you were using meth during
> that period of time.

To the extent that such statements indicate that the district court thought that Atherton may have committed other acts of abuse against MV1 than those recorded in the videos found, there is no indication that the court "demonstrably relied" on those speculations in imposing sentence. *United States v. Ibarra*, 737 F.2d 825, 827 (9th Cir. 1984) (internal quotation marks omitted).[11]

In the cases Atherton relies upon, the district court unambiguously based its sentence upon unsupported allegations of other crimes. In *United States v. Weston*, for example, we concluded that the district court improperly relied upon unsubstantiated allegations in the PSR that the defendant was a distributor of narcotics. 448 F.2d 626, 628, 634–35 (9th Cir. 1971). There, the district court initially indicated that a 5-year sentence was appropriate but later imposed a statutory maximum 20-year sentence, after accepting the allegations of other crimes in the PSR as true absent contrary evidence from the defendant. *Id.* at 628–30. Similarly, in *United States v. Safirstein*, the district court abused its discretion when it explicitly relied upon an unsubstantiated inference that the defendant was involved in drug trafficking in sentencing him to the statutory maximum. 827 F.2d 1380, 1386 (9th Cir. 1987). There, the court repeatedly stated that it was sentencing the defendant "as a

---

[11] The court also noted that it could be "just the tip of the iceberg, about what kind of videos, what kind of chat rooms, what kind of other behavior" Atherton engaged in. That statement did not suggest additional abuse of MV1 in particular.

drug trafficker," despite defense counsel's repeated objections. *Id.*

Here, the district court's comments concerning "what happened" between MV1 and Atherton were made in the context of assessing whether his actions were predatory or opportunistic. There is no evidence that the court *increased* the defendant's sentence based upon the assumption that the abuse extended beyond the charged acts. Instead, the court pointed to the need for accountability and community safety, proportionality to a comparable defendant the judge had previously sentenced, and the hope that Atherton would have access to better treatment resources upon release, as the justification for the 30-year sentence. The court's "passing reference" to possible other acts does not make it "abundantly clear" that the court imposed a sentence based on unsubstantiated allegations of more serious behavior. *Hill*, 915 F.3d at 674 (citation omitted).

In sum, Atherton has not shown that his 30-year sentence "was demonstrably based on false or unreliable information." *Vanderwerfhorst*, 576 F.3d at 937. If there was any error, it was certainly not "plain." *Id.* at 934. Accordingly, neither of the first two elements of the plain error test are met.

## III. Conclusion

Atherton failed to show that the district court unconstitutionally relied upon false or unreliable information in sentencing. His sentence is therefore not unconstitutional.

**AFFIRMED.**

MILLER, Circuit Judge, dissenting:

Keith Atherton recorded videos of himself sexually abusing a three-year-old child. When he distributed the videos online, federal agents obtained a warrant to search his electronic devices, where they discovered more than 10,000 images and videos of child sexual exploitation, several depicting torture. Atherton faced a three-count federal indictment—for production, distribution, and possession of child pornography—as well as possible state charges, with a total potential prison term longer than his likely life span. He sensibly negotiated a plea agreement: He pleaded guilty to a single count of production of child pornography; federal prosecutors dismissed the other counts in the indictment; and state prosecutors promised not to bring charges of their own. In exchange, Atherton waived the right to appeal his sentence.

Today, the court relieves Atherton of his end of the bargain by allowing him to appeal based on purported due-process violations at his sentencing. Although the court is correct that no due-process violation occurred, it errs in reaching the merits of Atherton's appeal. I would instead hold him to his agreement and dismiss the appeal.

We have repeatedly held that "[a] defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." *United States v. Wells*, 29 F.4th 580, 583 (9th Cir. 2022) (quoting *United States v. Joyce*, 357 F.3d 921, 922 (9th Cir. 2004)); *accord United States v. Minasyan*, 4 F.4th 770, 777–78 (9th Cir. 2021). Atherton does not dispute that he

agreed to an appellate waiver knowingly and voluntarily. And by its terms, the waiver covers this appeal. It provides:

> Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that: (1) the sentence imposed exceeds the statutory maximum, or (2) the Court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of Guidelines Chapters 4 or 5K.

Neither of those exceptions applies: Atherton's sentence does not exceed the statutory maximum, and the district court chose it without applying an upward departure under Chapters 4 or 5K of the Sentencing Guidelines.

The plain text of the waiver should therefore resolve this case. But Atherton alleges that the district court violated the Due Process Clause by relying on what he calls "false or unreliable information" in determining his sentence. And he argues that, under our case law, "a general appeal waiver does not waive a defendant's right to raise a constitutional challenge to the sentence." Atherton's interpretation of the waiver is inconsistent with the text of his agreement and the law governing appellate waivers.

It is important to be clear about what Atherton is *not* arguing. He does not suggest that the Constitution, or any other source of law, imposes a substantive limit on the ability of a defendant to waive his right to appeal based on an alleged due-process violation at sentencing like the one Atherton now asserts. Such an argument would lack merit: If a defendant can waive his right to appeal—and it is well

settled that he can—then there is no reason why that waiver cannot encompass the right to appeal on such a ground. After all, *any* plea agreement waives important constitutional rights, including the right to trial by jury and the panoply of other trial rights guaranteed by the Fifth and Sixth Amendments.

Moreover, what a defendant bargains away in an appellate waiver is not the underlying right itself, but rather the ability to *appeal* based on an alleged violation of that right. The right to appeal is statutory, not constitutional, and it is routinely subject to waiver or even forfeiture. *Abney v. United States*, 431 U.S. 651, 656 (1977). As Judge Easterbrook has observed, "[o]ur legal system makes no appeal the default position. A defendant who finds this agreeable need do nothing." *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995). An appellate waiver in a plea agreement simply "make[s] that outcome a part of the parties' bargain, so that a defendant inclined against appeal or willing to forgo it . . . may obtain a concession from the prosecutor." *Id.*

To be sure, a due-process violation at sentencing will not yet have happened when the plea agreement is signed. But the same is true of any sentencing error, such as a miscalculation of the Guidelines range or the imposition of a substantively unreasonable sentence. Nevertheless, we routinely apply appellate waivers to bar appeals asserting such errors. *See*, *e.g.*, *United States v. King*, 985 F.3d 702, 710 (9th Cir. 2021); *United States v. Medina-Carrasco*, 815 F.3d 457, 459 (9th Cir. 2016); *United States v. Schuman*, 127 F.3d 815, 817 (9th Cir. 1997). We have emphatically rejected the suggestion that an appellate waiver is involuntary simply because "a defendant cannot know or understand what appellate issues may arise until after sentencing." *United*

*States v. Navarro-Botello*, 912 F.2d 318, 320 (9th Cir. 1990); *see also United States v. Lo*, 839 F.3d 777, 784 (9th Cir. 2016). After all, "[w]hen a defendant waives his appellate rights, he knows that he is giving up all appeals, no matter what unforeseen events may happen." *United States v. Goodall*, 21 F.4th 555, 562 (9th Cir. 2021). As we have explained, "[a] plea agreement is no different in this respect from any other contract in which someone may have buyer's remorse after an unforeseen future event—the contract remains valid because the parties knowingly and voluntarily agreed to the terms." *Id.* Accordingly, even when later developments in the law make clear that the offense of conviction is unconstitutional, the appellate waiver remains valid and enforceable. *Id.* at 562–63. If an appellate waiver can bar a constitutional challenge to the conviction, it can also bar a constitutional challenge to the sentence.

Atherton therefore concedes that a defendant *can* waive the right to appeal based on a due-process argument like the one he now asserts. In his plea agreement, Atherton did just that. Because "[p]lea agreements are essentially contracts between the government and a defendant," they are construed according to ordinary principles of contract interpretation. *United States v. Farias-Contreras*, No. 21-30055, 2024 WL 2809369, at *4 (9th Cir. June 3, 2024) (en banc). "In construing an agreement, the court must determine what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty." *Id.* (quoting *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993)). Here, "what the defendant reasonably understood" is unmistakable. With only two enumerated exceptions, Atherton's waiver expressly prohibits an "appeal from *any* aspect of the conviction and sentence on *any* grounds." (emphasis added). "Read naturally, the word 'any'

has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting *Webster's Third New International Dictionary* 97 (1976)). The phrase "any grounds" thus encompasses alleged due-process violations at sentencing. The agreement could not have been clearer.

For Atherton to prevail, we must apply not merely a clear-statement rule but rather a hyper-specific-statement rule requiring an express enumeration of the specific constitutional claims that are covered. In allowing Atherton's appeal to proceed, the court adopts just such a rule, stating that, to be enforced, an appellate waiver must "specify[] the constitutional rights waived." *But see Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 388 (2023) (explaining that a normal clear-statement rule "is not a magic-words requirement").

Tellingly, neither Atherton nor the court explains what purpose such a rule might possibly serve. To satisfy the express-enumeration requirement, the government and Atherton could presumably have followed the phrase "on any grounds" with something like "including the First Amendment, or the Second Amendment, or the Third Amendment . . . ." Alternatively, they could have included the text of the Constitution as an addendum to the agreement. Either approach, it seems, would "specify the constitutional rights" covered by the waiver. Neither would be meaningfully clearer than waiving "the right to appeal from any aspect of the conviction and sentence on any grounds," as Atherton did. The benefit to defendants of the court's approach is therefore impossible to discern.

Rather than trying to justify its approach as a matter of first principles, the court relies primarily on its interpretation of our prior cases. But our cases do not support the result reached today.

The leading case is *United States v. Wells*, 29 F.4th 580 (9th Cir. 2022). There, we recognized that certain earlier decisions—among them, *United States v. Bibler*, 495 F.3d 621 (9th Cir. 2007)—had established "that an exception to an appeal waiver applies to sentences that are unlawful or violate the Constitution." *Wells*, 29 F.4th at 585. Acknowledging that "our caselaw has not been entirely clear on when the exception based on constitutional challenges applies or on the scope of the exception," we set out to "clarify the *Bibler* rule by addressing our various circuit precedent." *Id.* After surveying our decisions, we held "that constitutional challenges to a sentence surviving an appeal waiver under the *Bibler* exception are limited to challenges that *the terms of the sentence itself* are unconstitutional." *Id.* at 587 (emphasis added). In the next sentence, we repeated that limitation: "The exception does not allow any constitutional challenges *per se*, such as the Sixth Amendment rights to a speedy and public trial or right to confront witnesses, which are not challenges that *the sentence* is unconstitutional." *Id.* (second emphasis added).

The court today acknowledges *Wells*'s statement that challenges surviving an appeal waiver are "limited to challenges that the terms of the sentence itself are unconstitutional." 29 F.4th at 587. And the court grudgingly admits that the statement "could perhaps be understood" to mean what it says—that is, that an appellate waiver bars all challenges except those directed to the terms of the sentence. But the court insists that a constitutional challenge to the

process by which a sentence was imposed "is also a challenge to the terms of the sentence."

An argument that the sentencing *process* was improper is not the same as an argument that the sentence *itself* is unlawful. As *Wells* itself illustrates, many defendants do bring constitutional challenges to the terms of their sentences. We have, for example, entertained First Amendment challenges to conditions of supervised release that restrict a defendant from accessing the Internet. *See Wells*, 29 F.4th at 590–92. We have also invalidated certain conditions of supervised release as unconstitutionally vague. *See*, *e.g.*, *United States v. Evans*, 883 F.3d 1154 (9th Cir. 2018). In those cases, the sentence itself was unlawful because it subjected the defendant to a form of punishment that the Constitution prohibits. Under *Wells*, those kinds of challenges are still permissible notwithstanding a waiver.

Atherton's challenge is different. His sentence was 30 years of imprisonment, to be followed by a life term of supervised release. Atherton does not argue that there is anything illegal about 30 years of imprisonment, or a life term of supervised release, as a punishment for a violation of 18 U.S.C. § 2251(a) and (e). He does not, in other words, challenge "the terms of the sentence" he received. *Wells*, 29 F.4th at 587. His challenge therefore does not fall within the exception recognized in *Wells*.

It is true that, in a handful of pre-*Wells* cases, we declined to enforce a valid appeal waiver when the defendant raised due-process objections to sentencing procedures—although none of them involved a due-process claim based on the district court's consideration of allegedly inaccurate information. *See United States v. Odachyan*, 749 F.3d 798, 801 (9th Cir. 2014) (judge's alleged anti-immigrant bias);

*United States v. Ornelas*, 828 F.3d 1018, 1020–21 (9th Cir. 2016) (sentencing in absentia); *United States v. Rivera*, 682 F.3d 1223, 1227–28 (9th Cir. 2012) (sentencing proceedings closed to the public). On the other hand, as Judge Bea observed in dissent in *Wells*, some of our earlier cases could be read to be even more parsimonious than the rule adopted in *Wells*. *See* 29 F.4th at 593 (9th Cir. 2022) (Bea, J., dissenting) (citing *Joyce*, 357 F.3d at 925, 927). The court in *Wells* sought to "clarify" some of the tensions in our case law; on the evidence of today's decision, its attempt appears regrettably to have failed. *Wells*, 29 F.4th at 585.

The court makes much of the concern that an appellate waiver might bar a claim of racially discriminatory sentencing. It does not suggest that such sentencing practices are common in the District of Oregon—or, that if they became common, defendants would continue to agree to appellate waivers without demanding greater concessions from the government on other terms of the plea agreement. But if concerns regarding racially discriminatory sentencing are thought to justify a special rule for interpreting appellate waivers, that rule should be limited to situations in which those concerns are actually present. The Supreme Court has adopted similarly tailored rules in other contexts. *See*, *e.g.*, *Peña-Rodriguez v. Colorado*, 580 U.S. 206, 221 (2017) ("The Constitution requires an exception to the no-impeachment rule when a juror's statements indicate that racial animus was a significant motivating factor in his or her finding of guilt."); *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (recognizing that the exercise of prosecutorial discretion is generally unreviewable, but allowing claims of selective prosecution based on race).

A more tailored approach would also be consistent with that taken by other courts of appeals. The court cites several

decisions from other circuits, but none holds that procedural due-process challenges based on what the court calls unreliable "informational inputs" are sufficient to void a valid appeal waiver. In fact, today's decision places us at odds with several courts of appeals that have enforced similar appeal waivers to bar due-process challenges to the information that district courts considered at sentencing. *See*, *e.g.*, *United States v. McGrath*, 981 F.3d 248, 250 (4th Cir. 2020); *United States v. Meirick*, 674 F.3d 802, 806 (8th Cir. 2012); *United States v. Rubbo*, 396 F.3d 1330, 1335 (11th Cir. 2005).

Other circuits "have refused to enforce valid appeal waivers for a '*narrow* class of claims.'" *United States v. Blick*, 408 F.3d 162, 171 (4th Cir. 2005) (emphasis added) (quoting *United States v. Lemaster*, 403 F.3d 216, 220 n.2 (4th Cir. 2005)). That class is limited to sentences "based on a constitutionally impermissible factor such as race." *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992); *accord United States v. Candelario-Ramos*, 45 F.4th 521, 524 (1st Cir. 2022); *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011); *United States v. Hicks*, 129 F.3d 376, 377 (7th Cir. 1997). In some circuits, it also extends to a deprivation of the Sixth Amendment right to counsel at sentencing. *See In re Sealed Case*, 901 F.3d 397, 402–03 (D.C. Cir. 2018) (distinguishing ineffective-assistance claims "from other sorts of claims"); *but see United States v. Williams*, 81 F.4th 835, 839 (8th Cir. 2023) (rejecting any exception to appeal waivers for ineffective-assistance claims). Atherton's appeal does not fall within any of those categories.

Some courts have located the right to appeal notwithstanding a waiver in the principle that the Due Process Clause provides a non-waivable guarantee of "some minimum of civilized procedure." *United States v. Adkins*,

743 F.3d 176, 192 (7th Cir. 2014) (quoting *United States v. Bownes*, 405 F.3d 634, 637 (7th Cir. 2005)). But that guarantee is violated only in extreme cases: As the First Circuit has put it, waiver may be excused in those "hen's-teeth rare" circumstances "when doing so is necessary in order to avoid a clear and gross injustice." *United States v. Miliano*, 480 F.3d 605, 608 (1st Cir. 2007). Atherton does not suggest that his challenge could proceed under that demanding standard.

In entertaining Atherton's challenge to his sentence, the court today adopts a rule far more permissive than that of any other court of appeals. Sentencing courts routinely make factual findings about matters such as the quantity of drugs a defendant possessed, the financial loss caused by the crime, or the nature and extent of injuries to victims. Defendants routinely challenge those findings. Until today, such challenges would have been barred by an appellate waiver. But as Atherton admitted at oral argument—and as the decision today confirms—all of those challenges can be recast as due-process arguments based on the district court's purported consideration of information that is "inaccurate," "mistaken," or the product of erroneously "unfounded assumptions." *United States v. Borrero-Isaza*, 887 F.2d 1349, 1352 (9th Cir. 1989). Such challenges can now go forward in the face of an appellate waiver, at least if the waiver does not contain a sufficiently explicit reference to due-process claims.

By refusing to enforce the unambiguous terms of Atherton's freely negotiated bargain, the court adds uncertainty and confusion to the plea-negotiation process. Although the court says that a waiver is enforceable so long as it specifies the constitutional claims that it covers, those negotiating a plea agreement will be hard-pressed to know

what constitutes adequate specificity—only that a waiver covering challenges to "any aspect of the conviction and sentence on any grounds" is not good enough. And if no one can be sure whether an appellate waiver will be honored, prosecutors will be less willing to offer concessions—like the significant benefits they gave Atherton—in exchange for a waiver. Neither defendants nor prosecutors will be better off as a result.