No. 21-30266

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

UNITED STATES OF AMERICA,

PLAINTIFF-APPELLEE,

V.

KEITH ATHERTON,

DEFENDANT-APPELLANT.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
D.C. NO. 6:18-CR-00351-AA
_____

PETITION FOR REHEARING EN BANC
_____

NATALIE K. WIGHT
UNITED STATES ATTORNEY
DISTRICT OF OREGON
SUZANNE MILES
CRIMINAL APPELLATE CHIEF
**SARAH BARR**
ASSISTANT UNITED STATES ATTORNEY
1000 SW 3RD AVENUE, SUITE 600
PORTLAND, OREGON 97204
TELEPHONE:  (503) 727-1000
ATTORNEYS FOR PLAINTIFF-APPELLEE

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION AND RULE 35(B)(1) STATEMENT ........................................... 1

ISSUE PRESENTED ................................................................................. 1

BACKGROUND ...................................................................................... 2

    A.    Sentencing Decision ................................................................ 2

    B.    Panel Decision ...................................................................... 4

        1.    The majority ................................................................ 4

        2.    The dissent .................................................................. 5

ARGUMENT .......................................................................................... 7

  I.  The panel wrongly held that the implied "illegal sentence" exception to a valid appeal waiver includes any constitutional challenge ............................. 7

    A.    The panel's view on prospective waivers is unfounded ............................ 7

    B.    The *Wells* exception is unsupportable ........................................... 10

    C.    *Wells* precludes the panel's expanded rule ................................... 12

    D.    This Court's other cases do not support the *Atherton* expansion ............ 13

    E.    The *Atherton* expansion takes this Court afield from other circuits ....... 15

  II.  The new rule adds uncertainty and has no discernible benefit .......................... 16

CONCLUSION ...................................................................................... 17

CERTIFICATE OF COMPLIANCE .............................................................. 18

# TABLE OF AUTHORITIES

## Cases

*Crespin v. Ryan*, 46 F.4th 803 (9th Cir. 2022) .................................................................... 14

*Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) ................................................................. 16

*Hill v. United States*, 368 U.S. 424 (1962) ............................................................................ 13

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ......................................................................... 16

*Peña-Rodriguez v. Colorado*, 580 U.S. 206 (2017) ............................................................. 6

*Peretz v. United States*, 501 U.S. 923 (1991) ....................................................................... 8

*Ricketts v. Adamson*, 483 U.S. 1 (1987) ............................................................................... 8

*United States v. Adams*, 780 F.3d 1182 (D.C. Cir. 2015) ................................................. 15

*United States v. Adkins*, 743 F.3d 176 (7th Cir. 2014) ..................................................... 11

*United States v. Ames*, 743 F.2d 46 (1st Cir. 1984) .......................................................... 12

*United States v. Andis*, 333 F.3d 886 (8th Cir. 2003) ....................................................... 15

*United States v. Baramdyka*, 95 F.3d 840 (9th Cir. 1996) ............................................... 13

*United States v. Bibler*, 495 F.3d 621 (9th Cir. 2007) ............................................. 4, 10–12

*United States v. Bolinger*, 940 F.2d 478 (9th Cir. 1991) .................................................. 11

*United States v. Broce*, 488 U.S. 563 (1989) ....................................................................... 9

*United States v. Buchanan*, 59 F.3d 914 (9th Cir. 1995) .................................................. 11

*United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) ......................................................... 9

*United States v. Fowler*, 794 F.2d 1446 (9th Cir. 1986) ............................................. 11–12

*United States v. Garcia-Lopez*, 309 F.3d 1121 (9th Cir. 2002) ........................................ 13

# Cases (cont.)

*United States v. Goodall*, 21 F.4th 555 (9th Cir. 2021) .......................................... 7–8, 11–15

*United States v. Johnson*, 67 F.3d 200 (9th Cir. 1995) ............................................... 8

*United States v. Lo*, 839 F.3d 777 (9th Cir. 2016) ..................................................... 8

*United States v. McGrath*, 981 F.3d 248 (4th Cir. 2020) ........................................... 15

*United States v. Medina-Carrasco*, 815 F.3d 457 (9th Cir. 2016) ..................................... 8, 17

*United States v. Meirick*, 674 F.3d 802 (8th Cir. 2012) ............................................... 15

*United States v. Melancon*, 972 F.2d 566 (5th Cir. 1992) ............................................ 9

*United States v. Mezzanatto*, 513 U.S. 196 (1995) ......................................... 8–9, 16

*United States v. Montalvo*, 581 F.3d 1147 (9th Cir. 2009) ........................................... 13

*United States v. Navarro-Botello*, 912 F.2d 318 (9th Cir. 1990) ............................... 8, 11, 16

*United States v. Odachyan*, 749 F.3d 798 (9th Cir. 2014) ..................................... 8, 13

*United States v. Ornelas*, 828 F.3d 1018 (9th Cir. 2016) ........................................... 14

*United States v. Petri*, 731 F.3d 833 (9th Cir. 2013) ................................................. 10

*United States v. Portillo–Cano*, 192 F.3d 1246 (9th Cir. 1999) .................................... 11

*United States v. Rivera*, 62 F.4th 778 (3d Cir. 2023) ................................................ 15

*United States v. Ruiz*, 536 U.S. 622 (2002) ............................................................. 9

*United States v. Shehadeh*, 962 F.3d 1096 (9th Cir. 2020) ....................................... 12

*United States v. Teeter*, 257 F.3d 14 (1st Cir. 2001) ................................................. 15

*United States v. Torres*, 828 F.3d 1113 (9th Cir. 2016) ......................................... 7, 14

*United States v. Wells*, 29 F.4th 580 (9th Cir. 2022) ........................................*passim*

## Statutes

18 U.S.C. § 2251 ........................................................................................... 2

18 U.S.C. § 3553 ...................................................................................... 3, 16

## Rules

Fed. R. Crim. P. 11 ..................................................................................... 11

Fed. R. Crim. P. 35 ................................................................................ 11, 13

## INTRODUCTION AND RULE 35(B)(1) STATEMENT

A divided panel of this Court let defendant out of his promise not to "appeal any aspect of [his] . . . sentence on any grounds" so that he could raise a so-called "procedural due process" claim challenging the "informational inputs" that the sentencing court used. Under the majority's decision, wrapping an argument in constitutional terms is all it takes to qualify for the implied exception to appellate waivers recognized in *United States v. Wells*, 29 F.4th 580 (9th Cir. 2022).

Precedent does not support the implied "constitutional violation" exception drawn in *Wells.* By now expanding that exception, the panel majority's decision conflicts with well-settled approval of broad and prospective appellate waivers, deepens unworkable intra-circuit tension on implied exceptions, and diverges from other circuits' rules on this issue.

The resulting rule disincentivizes the plea negotiation process, discourages district courts' sentencing explanations, and welcomes resource-heavy litigation by allowing ostensibly waived, routine sentencing challenges to be heard, so long as they are dressed in constitutional clothing.

## ISSUE PRESENTED

Does a defendant's claim that the district court violated due process by relying on false or unreliable information at sentencing fall within an implied exception to an otherwise valid appeal waiver?

1

## BACKGROUND

### A.      Sentencing Decision

Defendant recorded videos of himself sexually abusing the three-year-old child of some friends. Op. 4–5. After defendant shared the videos online, federal agents seized and searched his electronic devices. Op. 4. They found more videos that defendant made of his three-year-old victim; chat messages describing how he had abused the boy; a guide on how to groom and sexually abuse children; and thousands of other videos and more than 10,000 images of child sexual exploitation. Op. 4–5.

Defendant agreed to plead guilty to one count of producing child pornography under 18 U.S.C. § 2251(a) and (e). Op. 5. In return, he got the dismissal of two other counts, a promise from the local district attorney to forgo prosecution on state charges, and the ability to argue for a sentence down to the 15-year statutory minimum. Op. 5–6. The government secured defendant's conviction and his waiver of appeal, and retained the discretion to recommend up to a 30-year sentence. *Id.*

The plea agreement's appeal waiver provision stated: defendant "knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that: (1) the sentence imposed exceeds the statutory maximum, or (2) the Court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of Guidelines Chapters 4 or 5K." *Id.*

At sentencing, defendant submitted an expert risk assessment report and supporting testimony. Op. 6. The district court imposed a 30-year guideline sentence. *Id.* The court recounted the 18 U.S.C. § 3553(a) goals, emphasizing the need to incapacitate defendant while his risk of reoffending was high, to account for the long-term effects on the victim and the grave "betrayal of trust" ensconced in his crime, and to protect the community. Op. 7. Addressing the expert's information, the court remarked that the state of scientific knowledge about sex-offender treatment "is embryotic" and noted that local resources were inadequate to manage defendant's treatment, especially given his drug addiction, but expressed hope that treatment resources will have improved when he is released. *Id.* The court also observed that defendant—who was using methamphetamine at the time—"may not even know" the extent of his conduct. *Id.*

Despite his waiver, defendant appealed. He argued that the court violated due process by relying on false or unreliable information that (1) assumed appropriate sex-offender treatment would be ineffective given the state of scientific knowledge; (2) assumed community-based treatment would be insufficient upon his release; and (3) speculated that he committed additional, unreported sex offenses against the victim. Op. 21–25, Def. Op. Br. at 20–25.

Defendant did not address the appeal waiver in his opening brief, but in reply argued that his waiver did not preclude an appeal that raises "a constitutional challenge to a sentence." Def. Rep. Br. at 5.

### B.    Panel Decision

The panel unanimously found that defendant's due process claim failed on the merits. Op. 25; *id.* at 26 (Miller, J., dissenting). The majority reached the merits after holding the appeal waiver did not bar it. The dissent would have "h[e]ld him to his agreement and dismiss[ed] the appeal." *Id.* at 26.

#### 1.    The majority

The majority acknowledged that the plain terms of defendant's appeal waiver covered his due-process challenge. It held, however, that the challenge was excepted from the appeal waiver under *Wells.* Op. 8. It read *Wells*—which interpreted *United States v. Bibler,* 495 F.3d 621 (9th Cir. 2007)—to hold that generally-worded appellate waivers do not cover constitutional-based sentencing challenges. Op. 9 (citing *Wells,* 29 F.4th at 587).

The decision acknowledged that *Wells* limited its exception "to challenges that the terms of the sentence itself are unconstitutional." Op. 10. But it reasoned that an argument that a sentence "was imposed unconstitutionally" "is also a challenge to the terms of the sentence," because it asserts that those terms "are entirely invalid." *Id.*

The majority supported its reading of *Wells* in two ways. First, by pointing to decisions from this and other circuits that had declined to enforce appeal waivers where defendants challenged what it called "informational inputs to the court's sentencing decision." Op. 12.

Second, by relying on a "conceptual point"—the difference between waiving trial-stage rights versus sentencing issues—opining that "a presentencing waiver should not be taken as waiving the right to a constitutionally imposed sentence absent a clear statement to that effect, including specifying the constitutional rights waived." Op. 13–15. In the majority's view, this "applies equally to procedural and substantive violations." *Id.* It found "no basis for limiting the *Wells* exception to one and not the other." *Id.*

## 2.    The dissent

In the dissent's view, "the plain text of the waiver should [ ] resolve this case" based on this Court's repeated holdings that an appellate waiver is enforceable "if the language of the waiver encompasses his right to appeal on the grounds raised" and "the waiver was knowingly and voluntarily made." Op. 26. Neither of those things are in dispute here. *Id.*

A defendant's waiver of the right to appeal a sentencing error always involves potential errors that have not yet occurred and may be unanticipated, like guidelines miscalculations or the imposition of a substantively unreasonable sentence. Op. 27–28. Nevertheless, this Court "routinely appl[ies] appellate waivers to bar appeals asserting such errors" and has "emphatically rejected the suggestion that an appellate waiver is involuntary simply because a defendant cannot know or understand what appellate issues may arise until after sentencing." *Id.*  The dissent noted that even

defendant conceded "that a defendant *can* waive the right to appeal based on a due-process argument." *Id.* at 29 (emphasis in original).

The dissent applied contract principles to determine whether defendant *did* waive. *Id.* It found that "what the defendant reasonably understood is unmistakable": "any grounds" "encompasses due-process violations at sentencing." *Id.*

It rejected the majority's reading of this and other circuits' precedent. *Wells* "mean[s] what it says" when it stated that an appellate waiver bars all claims except "challenges that *the terms of the sentence itself are unconstitutional.*" *Id.* (emphasis in original). "An argument that the sentencing *process* was improper is not the same as an argument that the sentence *itself* is unlawful." *Id.* at 32 (emphasis in original). And no court of appeals has held "that procedural due-process challenges based on what the [majority] calls unreliable 'informational inputs' are sufficient to void a valid appeal waiver." Op. 33. The majority's "far more permissive" exception puts this Court "at odds" with other circuits, which refuse to enforce valid appeal waivers only for a narrow class of claims. Op. 33–34. (citing Fourth, Eighth, and Eleventh Circuits).

In the dissent's view, this Court could carve out a "special rule" to encompass claims "of racially discriminatory sentencing" in a case that raises it, as the Supreme Court has done in comparable settings. Op. 33 (citing, among others, *Peña-Rodriguez v. Colorado*, 580 U.S. 206 (2017)). But this case does not raise it.

What we are left with, the dissent observed, is "a hyper-specific-statement rule requiring an express enumeration of the specific constitutional claims that are

covered," Op. 30—a rule that leaves "[n]either defendants nor prosecutors . . . better

off." *Id.* at 36. Thus *Wells* "regrettably . . . failed" in its attempt to "clarify" tensions

among this Court's earlier cases, and the majority's decision compounds that failure.

*Id.*

## ARGUMENT

## I.     The panel wrongly held that the implied "illegal sentence" exception to a valid appeal waiver includes any constitutional challenge.

*Wells's* implied exception to appellate waivers for constitutional claims and

*Atherton*'s expansion of that exception to sentencing process claims, creates

unacceptable intra-circuit tension, moves this Court far afield from other circuits, and

carries undue practical implications.

Its effect is to swallow the rule. Under *Atherton*, if a defendant "*raises* a

constitutional challenge," his appeal pierces his waiver. Op. at 8, 17 (emphasis in

original). A defendant need only do what defendant did here and wrap any run-of-the-

mill sentencing appeal in constitutional terms to evade his bargained-for agreement.

### A.     The panel's view on prospective waivers is unfounded.

Standard principles of contracts law guide this Court's interpretation of a plea

agreement. *Wells*, 29 F.4th at 583; *United States v. Goodall*, 21 F.4th 555, 563 (9th Cir.

2021); *United States v. Torres*, 828 F.3d 1113, 1124 (9th Cir. 2016). "A defendant's

waiver of his appellate rights is enforceable if the language of the waiver encompasses

his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." *Wells*, 29 F.4th at 583.

Although contract law is a "useful analogy" for, and not fully binding on, plea agreements, it serves as a doctrinal lodestar. *Ricketts v. Adamson*, 483 U.S. 1, 16 (1987). Veering from it should be justified by constitutional need. *Id.*

Prospective appeal waivers have been deemed valid even though the defendant "could not know or understand what appellate issues may arise until after sentencing." *United States v. Johnson*, 67 F.3d 200, 202 (9th Cir. 1995). Defendants accept the bargained-for risk of unforeseen issues in exchange for "the certainty derived from the negotiated plea with a set sentence parameter." *United States v. Navarro-Botello*, 912 F.2d 318, 320 (9th Cir. 1990); *see also United States v. Medina-Carrasco*, 815 F.3d 457, 462 (9th Cir. 2016); *United States v. Lo*, 839 F.3d 777, 784 (9th Cir. 2016); *Goodall*, 21 F.4th at 562.

Where, like here, "a waiver of the right to appeal explicitly sets out certain exceptions," everything that falls outside of those exceptions is waived. *United States v. Odachyan*, 749 F.3d 798, 804 (9th Cir. 2014) (cite omitted). This stands in line with the broad autonomy afforded criminal defendants to bargain, including to trade away the "most basic" rights for benefits. *Peretz v. United States*, 501 U.S. 923, 936 (1991); *see also United States v. Mezzanatto*, 513 U.S. 196, 200–01 (1995) (surveying waivable rights).

The majority's conclusion that "the right to a constitutionally imposed sentence" cannot be waived in general terms does not square with this precedent. Op.

at 15. Its sole citation to an out-of-circuit special concurrence highlights the aberration. *United States v. Melancon*, 972 F.2d 566, 571 (5th Cir. 1992) (Parker, D.J., specially concurring).

The majority's specificity requirement also does not square with Supreme Court precedent that "has found that the Constitution . . . permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630 (2002). For example, an unforeseen potential defense, even one raising constitutional error, does not prevent a defendant from relinquishing it merely by pleading guilty. *See United States v. Broce*, 488 U.S. 563, 569 (1989). In the same vein, "complete knowledge," of every possible sentencing error is not a constitutional prerequisite to waive appeal rights. *Ruiz*, 536 U.S. at 622. Especially because the right being waived is not the "right to a constitutionally imposed sentence," as the majority characterizes it, but the statutory right to appeal it. Op. 28 (Miller, J., dissenting).

The majority's public policy concerns—that courts will trample defendants' constitutional rights at sentencing with "impunity"—do not justify the expansive rule the majority created. Op. at 14. First, there is little reason to think that, without this rule, district courts will run rampant. The court didn't in this case. This Court "assume[s] that district judges know the law and understand their [sentencing] obligation[s]." *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008); *cf. Mezzanatto*, 513 U.S. at 209 (dismissing similar arguments about prosecutorial overreaching). And

"[d]istrict courts merit trust in their ability to weigh the evidence and arguments raised in memoranda and the sentencing hearing." *United States v. Petri*, 731 F.3d 833, 840 (9th Cir. 2013). Second, a more narrowly drawn miscarriage of justice rule, like that adopted in other circuits, would protect the courts' integrity.[1]

The majority's divergent view on prospective waivers does not justify its break from settled principles regarding waivers. As discussed below, the circuit and out-of-circuit precedent that it cites does not support it either.

### B.     The *Wells* exception is unsupportable.

*Atherton* is an outgrowth of this Court's decision in *Wells*. But that decision is problematic in its own right.

This Court allowed Wells to raise First Amendment, vagueness, and improper delegation challenges to his supervised release conditions despite his valid appellate waiver. *Wells*, 29 F.4th at 588. The *Wells* court pointed to *Bibler*, which it read to create an implied exception to appellate waivers for "illegal sentence" claims, meaning a sentence that "exceeds the permissible statutory penalty for the crime or violates the constitution." *Id.* at 584 (citing *Bibler*, 495 F.3d at 624).

---

[1] *Wells* recognized, but then disregarded, that this Court has imposed a "miscarriage of justice standard" in prior cases. 29 F.4th at 583 (noting that "when the language of a plea agreement is clear and absent some miscarriage of justice, we will not exercise the jurisdiction to review the merits of an appeal if we conclude that the defendant knowingly and voluntarily waived the right to bring the appeal.") (cite and punctuation omitted).

The provenance of *Wells*'s illegal sentence exception is not so clear. Bibler "d[id] not allege a constitutional violation," so the Court did not have to consider the scope of that piece of the exception.[2] *Bibler*, 495 F.3d at 624. It simply imported the constitutional error idea from another case. *Bibler*, 495 F.3d at 624 (citing *United States v. Fowler*, 794 F.2d 1446, 1449 (9th Cir. 1986)). But *Fowler* was not an appeal waiver case. It addressed the scope of a court's authority under Rule 35 to correct an "illegal sentence." *Fowler*, 794 F.2d at 1450; *see also Goodall*, 21 F.4th at 563.

*Wells*'s decision to allow defendants to bypass broadly inclusive appeal waivers by raising a "constitutional claim directly challeng[ing] the sentence itself," 29 F.4th at 587, is precariously founded. *See United States v. Adkins*, 743 F.3d 176, 193 (7th Cir. 2014) (there is no "general 'constitutional-argument exception' to waivers in plea agreements"). This Court should use this opportunity to revisit and correct *Wells*, something the *Wells* majority welcomed at the time. *Wells*, 29 F.4th at 587 n.3

---

[2] Nor did *Bibler* analyze the other listed reasons an appeal waiver might not apply, where (1) a defendant's guilty plea fails to comply with Fed. R. Crim. P. 11; (2) the sentencing judge tells the defendant she has the right to appeal; and (3) the sentence does not comport with the terms of the plea agreement. *Bibler*, 495 F.3d at 624 (citing *United States v. Portillo–Cano*, 192 F.3d 1246, 1252 (9th Cir. 1999); *United States v. Buchanan*, 59 F.3d 914, 917–18 (9th Cir. 1995); *United States v. Bolinger*, 940 F.2d 478, 479–80 (9th Cir. 1991). Anyway, these reasons do not help the majority's case. The first two render an appeal waiver inapplicable, which is different from preserving a valid waiver but excepting an argument from it. The third drills down to a case that offered no analysis or authority for the exception noted. *Bolinger*, 940 F.2d at 480 (citing *Navarro-Botello*, 912 F.2d at 320).

(acknowledging the "*Bibler* rule as problematic" and inviting an "en banc court [to] decide if *Bibler* and its progeny should be overturned [to] adopt a new rule.").

**C.  *Wells* precludes the panel's expanded rule.**

If any limit to the illegal sentence exception can be gleaned from *Wells*, it is that procedural challenges are not included. Relying on *Bibler* and *Fowler, Wells* carries forward a distinction between illegal sentences and the sentencing process. *See Bibler*, 495 F.3d at 624 (finding sentencing court's failure to apply the safety valve statute did not create an "illegal sentence"); *id.* (citing *Fowler*, 794 F.2d at 1449) (distinguishing between an "illegal sentence" and a sentence "imposed in an illegal manner"). *Fowler* approved of *United States v. Ames*, 743 F.2d 46, 47 (1st Cir. 1984), which held that a sentencing court's consideration of a report containing material misrepresentations did not raise a proper "illegal sentence" claim but asked whether the sentence "was imposed in an illegal manner." *Fowler*, 794 F.2d at 1449.

*Wells* affirmed this distinction in another way too. It declined to "extend the meaning of an 'illegal sentence' to encompass sentences that violate" statutes governing the "imposition of" the sentence. *Wells*, 29 F.4th at 585.

*Wells* may have "dr[awn] a dividing line between constitutional violations affecting only the sentence and those affecting the conviction." Op. 11 (citing *United States v. Shehadeh*, 962 F.3d 1096, 1102 (9th Cir. 2020)). It did not eliminate the *Bibler/Fowler* dividing line between "violations concerning the substance of a sentence and those involving the procedure via which it was imposed." Op. at 11.

The majority found "no basis for limiting the *Wells* exception to" substantive and not procedural violations. Op. 15. But there is a very good reason. *Wells* says so, and its rationale relies on it. *Id.*

This Court has consistently resisted attempts to expand the "illegal sentence" exception. *See United States v. Montalvo*, 581 F.3d 1147, 1153 (9th Cir. 2009) (addressing Rule 35); *Goodall*, 21 F.4th at 563 (rejecting expansion of the "illegal sentence" term-of-art to "illegal convictions"); *see also Hill v. United States*, 368 U.S. 424, 430 (1962) (distinguishing illegal punishment or terms from other types of errors).

The majority's rationale for doing so does not pass muster.

**D.     This Court's other cases do not support the *Atherton* expansion.**

The majority assures that this Court has "repeatedly permitted defendants to raise due process challenges to their sentence despite the existence of a valid appeal waiver." *See* Op. 11–12 (citing cases to opine contrary conclusion). The cited cases do not bear that out.

The government did not invoke the appellate waiver in *Odachyan*, 749 F.3d at 801; *cf United States v. Garcia-Lopez*, 309 F.3d 1121, 1122–23 (9th Cir. 2002) (government can waive a waiver argument).

In *United States v. Baramdyka*, 95 F.3d 840, 844 (9th Cir. 1996), the Court did not consider whether a due process violation would circumvent the defendant's broad waiver provision because Baramdyka "raise[d] no [such] claim." It forecasted that such a claim might succeed if "the sentence was the result of discriminatory animus"

or "other *similar form* of due process violation." *Id.* (emphasis added). That line is consistent with that drawn by other circuits, as discussed below.

Finally, *United States v. Ornelas*, 828 F.3d 1018, 1021–22 (9th Cir. 2016), enforced an appeal waiver after concluding that the defendant's due process rights were not violated by his *in absentia* sentencing. It did not rule that if the hearing *had* violated due process, the waiver would necessarily give way.

Other cases that have addressed "other types of constitutional arguments" "challenging informational inputs" also do not support the majority's expanded exception. Op. 12 (citing cases).

*Torres* found the sentencing guidelines' crime-of-violence residual clause unconstitutionally vague. 828 F.3d at 1125. That rendered the sentence substantively unconstitutional; the case raised no procedural claim.

*Crespin v. Ryan*, 46 F.4th 803, 806 (9th Cir. 2022), does not help either. That case involved a plea agreement that contained no waiver of defendant's habeas rights. The Court held that "a waiver of collateral attack must be express." *Id.* at 808–09.

The Court noted in dicta the premise that a defendant cannot voluntarily and intelligently waive a substantive constitutional right of which he is unaware. *Id.* at 809; *see also* 807 (finding the constitutional rule at issue procedural and substantive); 810 n.4 (declining to address whether an express "waiver of a *substantive* constitutional right would even be enforceable") (cite and internal punctuation omitted) (emphasis in

14

original). That suggests the Court recognized a dividing line between substantive illegality and procedural error.

**E.    The *Atherton* expansion takes this Court afield from other circuits.**

Other courts have declined to find an implied exception for "informational input" claims. *See United States v. McGrath*, 981 F.3d 248, 250 (4th Cir. 2020); *United States v. Adams*, 780 F.3d 1182, 1184 (D.C. Cir. 2015); *United States v. Meirick*, 674 F.3d 802, 805 (8th Cir. 2012).

The majority cites out-of-circuit cases that have allowed appeals "on the ground that the sentencing court relied on a constitutionally impermissible procedure or factor." Op. 12–13 (citing cases). But the exceptions in those cases were narrow— couched in "miscarriage of justice" terms—and typically applied when the sentence was based on a manifestly impermissible factor like race or gender. These courts cautioned that the exception "will be applied sparingly and without undue generosity." *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001); s*ee also United States v. Andis*, 333 F.3d 886, 891 (8th Cir. 2003) (en banc) (similar); *United States v. Rivera*, 62 F.4th 778, 785 (3d Cir. 2023) (similar).

That is not what happened here. These cases do not support expanding the waiver exception to garden-variety procedure claims, even if cloaked in due process terms.

**II.     The new rule adds uncertainty and has no discernible benefit.**

In *Goodall*, this Court forewarned against the broad expansion of the implied exception. 21 F.4th at 564; *see also Wells*, 29 F.4th at 595 (Bea, J., dissenting). Plea agreements are chilled "if the defendant could evade his obligations so easily" and "the benefits of plea bargaining—efficiency and finality—would thus erode, as defendants seek to have their cake and eat it too." *Id.*; *see also Navarro-Botello*, 912 F.2d at 322; *Mezzanatto*, 513 U.S. at 207 (acknowledging the government as the "other essential party" to plea negotiations). Further, the potential chilling effect on district courts is a real concern. In tension with our need for sentencing courts to sufficiently explain their sentencing decisions under 18 U.S.C. § 3553, the rule disincentivizes explanation, as any passing comment may now lay fodder for a due process challenge—as happened here.

Due process is a "broad" and "flexible" constitutional concept, *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999); *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), now limiting the "illegal sentence" exception only to a defendant's creativity. Op. 35 (Miller, J., dissenting) (listing examples of common procedural matters easily recast in due process terms). This case is illustrative. Defendant's real issue was that he received a statutory maximum 30-year sentence as a first-time offender. But he agreed to that possibility when he accepted the agreement, which expressly contemplated it. All it took to nullify that waiver was pulling a few passing statements out of context and claiming unfair process. Valid appeal waivers should not be so easily overcome.

Specifying the waived constitutional rights in the plea agreement does not solve the majority's issue. It just raises a new problem: how much specificity is required? Listing constitutional amendments or attaching the Bill of Rights, *see* Op. 35 (Miller, J., dissenting), *Wells*, 29 F.4th at 595 (Bea, J., dissenting), arguably does not notify the defendant of the precise errors that might occur. And a "hyper-specific statement" of waived claims is unlikely to decrease appellate litigation; the parties can't reasonably contemplate every potential error, leaving space between the cracks for the kind of creative lawyering that happened here. Further, a defendant can still argue that a precisely worded waiver is ambiguous, and thus not voluntarily agreed to. *See, e.g.*, *Medina-Carrasco*, 815 F.3d at 466 (Friedman, J., dissenting) (finding express waiver condition ambiguous).

## CONCLUSION

This Court should grant the petition for rehearing en banc and correct this Court's errors in *Wells* and *Atherton*.

DATED:  October 16, 2024.   NATALIE K. WIGHT
           United States Attorney
           District of Oregon

           */s/ Sarah Barr*
           SARAH BARR
           Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

Circuit Rule 40-1(a) limits petitions for rehearing to 15 pages or, in the alternative, 4,200 words. The enclosed petition for rehearing en banc contains 4,102 words, in compliance with Rule 40-1(a).

DATED: October 16, 2024.  NATALIE K. WIGHT
United States Attorney
District of Oregon

_/s/ Sarah Barr_
SARAH BARR
Assistant United States Attorney