**No. 21-30266**

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

KEITH ATHERTON,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the District of Oregon
No. 6:18-cr-00351-AA-1
Hon. Ann L. Aiken

_____

## APPELLANT'S SUPPLEMENTAL BRIEF

_____

Elizabeth G. Daily
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, Oregon 97204
(503) 326-2123
Liz_Daily@fd.org

*Attorney for Appellant Atherton*

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................. iii

Introduction .............................................................................................5

    A.    The Supreme Court in *Hunter* held that courts should not enforce an appeal waiver when doing so would result in a miscarriage of justice..............................................................6

    B.    In concurrence, Justice Gorsuch raised additional reasons to exercise caution in enforcing appeal waivers......................................9

    C.    This Court's illegal sentence exception satisfies *Hunter*'s miscarriage-of-justice standard. ...........................................11

    D.    The miscarriage-of-justice standard encompasses due process violations at sentencing. ...................................................14

    E.    Independently of the miscarriage-of-justice exception, the Court should affirm the illegal sentence exception to ensure that prospective waivers of sentencing appeals are knowing, voluntary, and fair. ............................................................16

Conclusion ...........................................................................................22

Certificate of Compliance for Briefs

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978) ................................................................ 9-10

*Hunter v. United States*,
146 S. Ct. 1702 (2026) ............................................................. *passim*

*Rosales-Mireles v. United States*,
585 U.S. 129 (2018) ................................................................. 16

*United States v. Goodall*,
21 F.4th 555 (9th Cir. 2021) ..................................................... 12, 18

*United States v. Ameline*,
409 F.3d 1073 (9th Cir. 2005) (en banc) .................................. 12

*United States v. Andruchuk*,
122 F.4th 17 (1st Cir. 2024) ..................................................... 19

*United States v. Baramdyka*,
95 F.3d 840 (9th Cir. 1996) ...................................................... 12

*United States v. Blick*,
408 F.3d 162 (4th Cir. 2005) .................................................... 21

*United States v. Blue Coat*,
340 F.3d 539 (8th Cir. 2003) .................................................... 13-14

*United States v. Ibarra*,
737 F.2d 825 (9th Cir. 1984) .................................................... 14

*United States v. Lajeunesse*,
85 F.4th 679, 692 (2d Cir. 2023) .............................................. 18-19, 20

*United States v. Lillard*,
57 F.4th 729 (9th Cir. 2023) ..................................................... 12

*United States v. Liriano-Blanco*,
510 F.3d 168, 174 (2d Cir. 2007) ........................................................ 20

*United States v. Paladino*,
401 F.3d 471 (7th Cir. 2005) ............................................................... 12

*United States v. Pollard*,
850 F.3d 1038 (9th Cir. 2017) ........................................................ 11-12

*United States v. Schopp*,
938 F.3d 1053 (9th Cir. 2019) .............................................................. 12

*United States v. Stavely*,
43 F.4th 9, 13 (1st Cir. 2022) .............................................................. 19

*United States v. Teeter*,
257 F.3d 14 (1st Cir. 2001) ................................................................. 18

*United States v. Torres*,
828 F.3d 1113 (9th Cir. 2016) ............................................................. 12

*United States v. Watson*,
582 F.3d 974 (9th Cir. 2009) ............................................................... 12

*United States v. Wells*,
29 F.4th 580 (9th Cir. 2022) ................................................ 11, 12, 13, 17, 21

*United States v. Weston*,
448 F.2d 626 (9th Cir. 1971) ............................................................... 15

## STATUTES

18 U.S.C. § 3661 ..................................................................................... 14

## OTHER

U.S. Sent'g Comm'n, Sourcebook Archives .......................................... 21

**INTRODUCTION**

In *Hunter v. United States*, the Supreme Court held that "an agreement not to appeal a sentence is unenforceable when it would result in a miscarriage of justice—meaning, when it would leave in place the kind of egregious error that would bring the judicial system into disrepute."146 S. Ct. 1702, 1708 (2026).

*Hunter* fully supports the panel opinion in this case. First, this Court's existing illegal sentence exception to appeal waivers allows a defendant to appeal a sentence that exceeds the statutory maximum or violates the constitution, precisely the types of errors that satisfy *Hunter*'s miscarriage-of-justice standard. A violation of the fundamental right to due process at sentencing—the claim raised here—is not a "standard-fare error"; it is an egregious error that would impugn the integrity of the judiciary if left uncorrected. Further, even if this Court's existing illegal sentence exception to appeal waivers operates more broadly than *Hunter's* miscarriage-of-justice limitation, *Hunter* did not purport to define the exclusive limit on appeal waivers. The illegal sentence exception provides a clear, workable rule that protects the integrity of the judicial system and the interests of both parties.

Accordingly, this Court should hold that a clear violation of due process at sentencing will satisfy *Hunter*'s miscarriage-of-justice standard. And because the

Court's illegal sentence exception remains fully consistent with *Hunter*, this Court should affirm it.

**A.** **The Supreme Court in *Hunter* held that courts should not enforce an appeal waiver when doing so would result in a miscarriage of justice.**

The Supreme Court in *Hunter* articulated a clear rule: regardless of the bargain struck between the parties, an agreement not to appeal a sentence is unenforceable when it would result in a miscarriage of justice. 146 S. Ct. at 1708.

The defendant in *Hunter* entered into a plea agreement with the government in which he "knowingly and voluntarily waived the right to appeal" his conviction and sentence except for a claim of ineffective assistance of counsel. *Id.* at 1708. In the agreement, Hunter acknowledged that his agreement included no "promise or representation" about the sentence, which would be imposed "within the sole discretion of the sentencing judge." *Id.* at 1708. At sentencing, the district court followed the recommendation of the Probation Office to impose a mandatory-medication condition of supervised release, a condition not mentioned in the plea agreement. The condition required that Hunter "participate in a mental-health treatment program" and "take all mental-health medications that are prescribed by [his] treating physician." *Id.* at 1708–09. Hunter appealed and argued that the condition "infringe[d] on [his] fundamental due process liberty interest in being

6

free of unwanted mental health medication." *Id.* at 1709. The Fifth Circuit

dismissed the appeal based on circuit precedent that required the enforcement of

appeal waivers unless the waiver itself is tainted by ineffective assistance of

counsel or the sentence exceeds the statutory maximum. *Id.* at 1709.

On certiorari, the Supreme Court rejected the Fifth Circuit's approach. The

Court recognized that, although plea agreements reflect a "bargain struck by a

defendant and prosecutor," courts too play a role, and that makes them responsible

in part for the bargain's results. *Id.* at 1712. In the district court, the judge must

actively accept the plea agreement, including the appeal waiver. It then falls to the

court of appeals to decide whether the appeal waiver is to be enforced, because

waivers are not self-enforcing. *Id.* ("Nothing, after all, literally prevents a

defendant who has signed such a waiver from filing an appeal[.]"). Thus, "[f]rom

start to finish . . . courts are in the middle of, and partly responsible for, appeal

waivers and their results." *Id.* at 1712.

The Court concluded that courts cannot shirk their responsibility by relying

on the parties' bargained-for appeal waiver. Among other things, courts'

involvement in plea agreements implicates the judiciary's independent institutional

interest "in ensuring that legal proceedings appear fair to all who observe them."

*Id.* at 1712. Therefore, some errors that would otherwise be insulated by an appeal

waiver are so egregious that it would "impugn the judiciary's integrity if an appeal waiver compelled them to stand." *Id.* at 1713; *see also id.* ("However certain the parties' agreement, the courts are too enmeshed in its approval and implementation to escape responsibility for such results.").

Premised on that judicial integrity rationale, the Supreme Court adopted what it described as "the majority view among the courts of appeals that an appeal waiver is unenforceable when it would result in a miscarriage of justice." *Id.* at 1713. Although the Court acknowledged that the miscarriage-of-justice standard defies any comprehensive definition, the Court explained that it "sets a high bar" in which the error must be "obvious—not one a judge could reasonably make," and "of the type that would undermine public confidence in the judiciary." *Id.* at 1713. "[S]tandard-fare errors in misapplying sentencing law" will not qualify. *Id.* at 1713. However, the Court emphasized the importance of maintaining the miscarriage-of-justice rule as a "safety valve" to protect "the justice system's basic integrity" and noted that the "possibility of correction" would help deter future errors. *Id.* at 1713–14.

To guide the lower courts, the Court offered three examples of errors that would meet the miscarriage-of-justice standard: a sentence "above the maximum prescribed," "a blatant constitutional error," or a sentence imposed "without 'some

minimum of civilized procedure[.]" *Id.* at 1714. Notably, the examples encompass both substantive and procedural sentencing errors, and the Court made clear that the examples were "not intended to be exclusive." *Id.* at 1714.

With regards to the challenged mandatory-medication condition of supervised release, the Supreme Court declined to determine in the first instance whether it satisfied the miscarriage-of-justice standard and left that question to the Fifth Circuit on remand. *Id.* at 1715.

**B.     In concurrence, Justice Gorsuch raised additional reasons to exercise caution in enforcing appeal waivers.**

Writing for a three-justice concurrence, Justice Gorsuch tracked the historical development of appeal waivers and expressed concern regarding the extent to which modern appeal waivers, if left unchecked, can undermine important values in the criminal justice system. *Hunter v. United States*, 146 S. Ct. 1702, 1715–24 (Gorsuch, J., concurring).

Part of the problem, Justice Gorsuch observed, is the exceptional power prosecutors wield in defining the terms of a defendant's plea. *Id.* at 1716–19. Although the concept of plea bargaining initially met with "intense judicial skepticism," the surrounding jurisprudence developed to approve "aggressive negotiating tactics" by prosecutors. *Id.* at 1717–18. For example, Justice Gorsuch recounted the history behind the Court's opinion in *Bordenkircher v. Hayes*, 434

9

U.S. 357 (1978), where the defendant rejected a plea bargain to five years in prison for forging an $88.30 check, only to be indicted under Kentucky's three-strikes law, resulting in a life sentence that the Court affirmed. *Id.* at 1717–18. With expanding federal criminal laws, Justice Gorsuch observed that it is now "easier than ever for prosecutors to cajole defendants into pleading guilty." *Id.* at 1718; *see id.* ("They threatened layers of additional charges and decades of additional prison time if defendants dared to exercise their right to trial by jury.").

Appeal waivers, a phenomenon that went from nearly nonexistent 40 years ago to commonplace today, add a new dimension to that imbalance of power because they require a defendant to waive the right to appeal a sentence that has not yet been imposed. *Id.* at 1719. That leaves a defendant to "negotiate in the dark." *Id.* And because appeal waivers are often bundled in a "take-or-leave package," defendants "often have little choice but to accept" the risk that the court will impose an illegal sentence. *Id.* at 1719. The concurrence questioned both the validity and prudential enforceability of prospective sentencing appeal waivers in that context:

> [H]ow can a defendant "know" and "fully understand" at the time he signs a plea agreement that a court might later order punishment that defies the Constitution, a federal statute, or this Court's precedents? Don't the parties generally expect that a sentencing court will act consistently with the rules of law then in force?

*Id.* at 1722. The right to appeal, Justice Gorsuch commented, is no less valuable than many other statutory rights the Supreme Court has held to be immune from prospective waiver. *Id.* at 1722 ("[I]t's hard to see on what basis we might conclude that the Sentencing Reform Act's promise to defendants that they may appeal their sentences implicates 'social interests' and 'statutory policy' any less worthy of respect than similar promises found in so many other statutory regimes where we have said prospective waivers are impermissible.").

Ultimately, because plea bargains are negotiated on an uneven playing field, and prospective waivers of sentencing appeals add significant uncertainty to the equation, Justice Gorsuch described the miscarriage-of-justice standard as "an important step toward reining in appeal waivers," but not a full "solution." *Id.* at 1724.

## C. This Court's illegal sentence exception satisfies *Hunter*'s miscarriage-of-justice standard.

This Court's illegal sentence exception, as articulated in the panel opinion and in *United States v. Wells*, 29 F.4th 580 (9th Cir. 2022), falls comfortably within *Hunter*'s miscarriage-of-justice standard.

The illegal sentence exception reflects this Court's longstanding recognition that there is a systemic interest in affording judicial review of unconstitutional and otherwise illegal sentences. *See United States v. Pollard*, 850 F.3d 1038, 1041,

1043 (9th Cir. 2017); *United States v. Torres*, 828 F.3d 1113, 1125 (9th Cir. 2016); *United States v. Watson*, 582 F.3d 974, 977 (9th Cir. 2009); *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996). As this Court has defined it, "an 'illegal sentence' has a very limited and precise meaning." *Wells*, 29 F.4th at 584. It is a sentence "not authorized by the judgment of conviction, [] in excess of the permissible statutory maximum, or that is in violation of the Constitution." *United States v. Goodall*, 21 F.4th 555, 563 (9th Cir. 2021) (simplified).

This Court has repeatedly recognized that an illegal sentence *is* a miscarriage of justice. *See United States v. Ameline*, 409 F.3d 1073, 1081 (9th Cir. 2005) (en banc) ("'[I]t is a miscarriage of justice to give a person an illegal sentence, just as it is to convict an innocent person[.]'") (quoting *United States v. Paladino*, 401 F.3d 471, 483 (7th Cir. 2005)); *accord United States v. Lillard*, 57 F.4th 729, 737 (9th Cir. 2023); *United States v. Schopp*, 938 F.3d 1053, 1069 (9th Cir. 2019). The opinion in *Hunter* confirms that result. The categories of error that make a sentence "illegal" under this Court's precedent are the same categories that satisfy the miscarriage-of-justice standard as articulated in *Hunter*. 146 S. Ct. at 1714 (identifying a sentence "above the maximum prescribed" and "a blatant constitutional error" as satisfying the miscarriage-of-justice standard).

12

Further, constitutional sentencing error is likely to "undermine public confidence in the judiciary." *Hunter*, 146 S. Ct. at 1713. This Court has recognized that the Constitution is the 'supreme law of the land'" and "imposes a floor below which a defendant's plea, conviction, and sentencing may not fall." *Wells*, 29 F.4th at 587. Thus, a constitutional error is per se egregious; it is not a "standard-fare error[] in misapplying sentencing law[.]" *Id.* As Justice Gorsuch aptly observed: "I would think a miscarriage of justice all but certain to arise whenever a sentence infringes a constitutional right that was 'firmly established at the time of sentencing.'" *Hunter*, 146 S. Ct. at 1720 (Gorsuch, J., concurring).

Moreover, because *Hunter* expressly adopted the majority rule, courts can rely on existing lower court opinions for guidance in construing the miscarriage-of-justice standard. 146 S. Ct. at 1713; *see also id.* at 1720 (Gorsuch, J., concurring) (noting that "decisions from Courts of Appeals that already apply the miscarriage-of-justice rule . . . can help illuminate the path forward"). The majority of circuits interpret a miscarriage of justice to include some formulation of the illegal sentence exception. *See* Resp. to Pet for Reh'g En Banc at 12–15, *United States v. Atherton*, No. 21-30266 (9th Cir. Dec. 16, 2024) (Docket Entry 56) (listing cases); *see also*, *e.g.*, *United States v. Blue Coat*, 340 F.3d 539, 542 (8th Cir. 2003)

("[T]he miscarriage of justice exception allows this court to hear appeals of illegal sentences, even where an otherwise valid waiver exists[.]").

To be sure, *Hunter* articulates an additional component of the miscarriage-of-justice standard: specifically, that the error must be "obvious." 146 S. Ct. at 1713. But that requirement goes to the claim's merits; it asks whether the error is clear and plain, not what type of illegality at issue. When a constitutional sentencing error is "obvious," this Court should hold that it qualifies as a miscarriage of justice and will not be left to stand solely due to a waiver of appeal.

## D. The miscarriage-of-justice standard encompasses due process violations at sentencing.

In this case, Mr. Atherton argued that, in imposing a statutory maximum sentence, the sentencing court relied on false or unreliable information in violation of his constitutional right to due process. The panel correctly held that review of that claim should not be barred by Mr. Atherton's appeal waiver.

Violations of the fundamental right to due process at sentencing are not "standard-fare errors." *Hunter*, 146 S. Ct. at 1713. Courts have broad discretion to consider a wide variety of information at sentencing. 18 U.S.C. § 3661. To satisfy due process, that information need only have "some minimal indicium of reliability beyond mere allegation." *United States v. Ibarra*, 737 F.2d 825, 827 (9th Cir. 1984). When a court relies on information that does not meet that bare minimum—

14

effectively making up facts or relying on mere allegation—the error infringes on the defendant's core rights. If left to stand, the error would undermine the integrity of the judiciary: "A rational penal system must have some concern for the probable accuracy of the informational inputs in the sentencing process." *United States v. Weston*, 448 F.2d 626, 634 (9th Cir. 1971).

Nor can *Hunter* be squared with the government's argument, pressed before the panel, that only substantive constitutional challenges can avoid an appeal waiver. *See United States v. Atherton*, 106 F.4th 888, 894 (9th Cir. 2024). The Court in *Hunter* confirmed that a miscarriage of justice encompasses a "blatant constitutional error" at sentencing, regardless of whether the error is substantive or procedural, as well as a sentence imposed "without 'some minimum of civilized procedure[.]" 146 S. Ct. at 1714. Constitutional due process sets the "minimum" required procedures.

Justice Gorsuch's concurrence crystallizes the point by identifying court of appeals opinions declining to enforce an appeal waiver for serious procedural errors at sentencing, even those that do not rise to the constitutional level. *Hunter*, 146 S. Ct. at 1720–21 (Gorsuch, J., concurring) (citing cases finding a miscarriage of justice based on a "marked departure from mandatory sentencing procedures," such as failing to explain a sentence or ignoring a defendant's sentencing

15

arguments). And the Supreme Court's own precedent establishes that "a plain and nonharmless error in calculating an advisory guidelines range" though non-constitutional, "ordinarily 'will seriously affect the fairness, integrity, and public reputation of judicial proceedings.'" *Id.* at 1720–21 (quoting *Rosales-Mireles v. United States*, 585 U.S. 129, 145 (2018)).

Although the panel ruled against Mr. Atherton's due process claim on the merits (a ruling Mr. Atherton has not challenged), the lack of merit goes only to whether the error is "obvious," not whether the type of error would undermine confidence in the judiciary if left uncorrected due to an appeal waiver. The correct result is therefore the one the panel reached here: considering the merits of the constitutional sentencing claim.

**E.** **Independently of the miscarriage-of-justice exception, the Court should affirm the illegal sentence exception to ensure that prospective waivers of sentencing appeals are knowing, voluntary, and fair.**

In adopting the "miscarriage of justice" approach, the Supreme Court in *Hunter* did not suggest that it affords the *sole* basis for limiting the enforcement or construction of an appeal waiver. Rather, the Court noted as "common ground" that an appeal waiver must also be "knowing and voluntary" and cannot be "tainted" by ineffective assistance of counsel. 146 S. Ct. at 1711. By adding the miscarriage-of-justice limitation to those rules, the Court neither expressly nor

implicitly rejected further limitations on appeal waivers. Thus, this Circuit's illegal sentence exception is fully consistent with *Hunter*, even if the Court finds that exception to be broader than the miscarriage-of-justice standard.

The illegal sentence exception provides that:

> a waiver of the right to appeal a sentence does not apply if (1) the defendant raises a challenge that the sentence violates the Constitution; (2) the constitutional claim directly challenges the sentence itself; and (3) the constitutional challenge is not based on any underlying constitutional right that was expressly and specifically waived by the appeal waiver as part of a valid plea agreement.

*Wells*, 29 F.4th at 587. That rule carries the full force of stare decisis in this Circuit, it has informed defendants' understanding of their plea agreements for decades, and it provides a clear, workable rule that protects the integrity of the judicial system and the interests of both parties. This Court should affirm it.

The same policy rationales identified by the majority and the concurrence in *Hunter*—(1) the institutional interest in correcting unlawful sentences to preserve judicial integrity; (2) the imbalance in bargaining power between the government and criminal defendants, and (3) the uncertainty that accompanies a prospective waiver of sentencing appeals—have repeatedly been identified by this Court and other circuits as bases to limit the enforcement of appeal waivers. Those rationales equally support adherence to this Court's illegal sentence exception.

First, as the panel opinion here explained, prospective waivers of sentencing appeals involve a greater degree of uncertainty than waivers that reach only trial or pretrial rights. *Atherton*, 106 F.4th at 896. In the latter context, "what is waived is a known concept." *Id.* Although the error itself may not be known at the time of the plea, the defendant is agreeing to a known result—the entry of a judgment of conviction for the offense admitted. But in the sentencing context "the defendant waives the right to appeal constitutional violations that may—but hopefully will not—happen in the future." *Id.* That means it is not just the possibility of error that is unknown, but the nature and magnitude of any potential error. *See, e.g., United States v. Teeter*, 257 F.3d 14, 21-26 (1st Cir. 2001) (articulating limits on prospective sentencing waivers given that, at the time of the guilty plea, the defendant "does not have a clue as to the nature and magnitude of the sentencing errors that may be visited upon her"); *accord Goodall*, 21 F.4th at 563 ("[T]he mistakes from which one might have reason to appeal have not yet occurred at the time a defendant waives the right to appeal or collaterally attack" the sentence."). Presuming the availability of appeal when a sentence violates the constitution affords a guardrail to narrow the scope of that uncertainty.

Courts have also recognized that "the government's awesome advantages in bargaining power" favors narrow construction of appeal waivers. *United States v.*

*Lajeunesse*, 85 F.4th 679, 692 (2d Cir. 2023). In the federal system, charges control sentences, leaving prosecutors holding all the cards. Although the majority in *Hunter* envisioned appeal waivers as a potentially valuable defense tool to secure favorable government concessions, 146 S. Ct. at 1713, that use presumes a level playing field. Justice Gorsuch's concurrence correctly recognized that, because bargaining power in reality favors the government, appeal waivers can be "bundled together with other terms in a plea deal in a take-or-leave package." *Hunter*, 146 S. Ct. at 1719 (Gorsuch, J., concurring). Defendants in that scenario have little choice but to accept.

The policy rationales articulated in *Hunter* have led courts to treat waivers of the right to appeal a sentence with caution. *See United States v. Andruchuk*, 122 F.4th 17 (1st Cir. 2024) ("[W]e have taken pains to erect sturdy guardrails around the use of appellate waivers in criminal cases."); *United States v. Stavely*, 43 F.4th 9, 13 (1st Cir. 2022) (sentencing appeal waivers "must 'meet stringent criteria' to ensure that they have been entered into knowingly and voluntarily"). The "illegal sentence" exception strikes the appropriate balance between competing considerations. It recognizes that a prospective waiver of the right to appeal an unknown sentence is not inherently unknowing or involuntary and allows a defendant to waive the right to appeal constitutional error, but only as to rights that

19

are "expressly and specifically waived." *Atherton*, 106 F.4th at 896. In that way, the rule "avoids providing carte blanche to sentencing courts to trample constitutional rights during the all-important sentencing proceedings, and at the same time assures that the defendant's quid pro quo for the prosecutor's plea agreement concessions is limited to specific circumstances contemplated in advance." *Id.*.

In *Lajeunesse*, the Second Circuit articulated a similar limitation as a question of "whether the sentence 'was reached in a manner that the plea agreement did not anticipate.'" 85 F.4th at 693 ("Given the magnitude and character of the right to allocution, its longstanding history, and our perception that this type of error is uncommon, we do not think Lajeunesse's plea agreement can reasonably be construed as anticipating a sentencing proceeding that omitted allocution."); *see also United States v. Liriano-Blanco*, 510 F.3d 168, 174 (2d Cir. 2007) ("Liriano-Blanco cannot be 'deemed to have accepted [the] risk' that the judge sentencing him would do so based on the judge's mistaken impression that his sentencing decision could be appealed."). In other words, "a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted

20

in accordance with constitutional limitations." *United States v. Blick*, 408 F.3d 162, 171–72 (4th Cir. 2005).

In seeking en banc rehearing, the government argued that the illegal sentence exception undermines "the benefits of plea bargaining—efficiency and finality[.]" Pet. for Reh'g En Banc, *United States v. Atherton*, No. 21-30266 (9th Cir. Oct. 16, 2024) (Docket Entry 52). But the Court in *Hunter* found no evidence that courts of appeals with similar exceptions are "awash with appeals." 146 S. Ct. at 1714. In fact, data from the United States Sentencing Commission consistently shows that, in this Circuit, only a small percentage of federal criminal cases result in an appeal, and there has been no spike in the appeal rate following the 2022 ruling in *Wells*.[1] That data confirms the lesson of experience: plea agreements result in finality in the vast majority of cases. But the illegal sentence exception provides an important backstop for the rare case where fundamental sentencing mandates are violated.

---

[1] *See* U.S. Sent'g Comm'n, Sourcebook Archives, https://www.ussc.gov/research/sourcebook/archive (last accessed Aug. 4, 2026). Comparing the number of defendants sentenced in the Ninth Circuit for each fiscal year to the total number of appeals confirms that appeal rates have remained consistently low: 6.1% in 2019; 5.5% in 2020; 4.8% in 2022, 3.9% in 2023, 4.1% in 2024, and 3.4% in 2025. *Id.*

In sum, the illegal sentence exception is fully consistent with *Hunter*. Because it respects bargained-for waivers, protects against unjust and systemically harmful results, and offers clarity and practicality for the parties and courts alike, the Court should affirm it.

## CONCLUSION

For the foregoing reasons, this Court should hold that a due process sentencing error will satisfy *Hunter*'s miscarriage-of-justice standard so long as it is "obvious." And because the Court's illegal sentence exception remains fully consistent with *Hunter*, this Court should affirm it.

Date:  August 4, 2026.

*s/ Elizabeth G. Daily*
Elizabeth G. Daily

*Attorney for Appellant Atherton*

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s):  21-30266**

I am the attorney or self-represented party.

**This brief contains 3,920 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties.
    [  ] a party or parties are filing a single brief in response to multiple briefs.
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[**X**] complies with the length limit designated by court order dated July 14, 2026.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature**  s/ Elizabeth G. Daily          **Date**  August 4, 2026
*(use "*s/[typed name]*" to sign electronically-filed documents)*

---

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                   *Rev. 12/01/22*