**NO. 21-30266**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

**UNITED STATES OF AMERICA**,

PLAINTIFF-APPELLEE,

V.

**KEITH ATHERTON**,

DEFENDANT-APPELLANT.

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**

**THE HONORABLE ANNE L. AIKEN, U.S. DISTRICT JUDGE**
**D.C. NO. 6:18-CR-00351-AA**

---

# SUPPLEMENTAL BRIEF OF PLAINTIFF-APPELLEE

---

SCOTT E. BRADFORD
UNITED STATES ATTORNEY
DISTRICT OF OREGON
KELLY A. ZUSMAN
ACTING APPELLATE CHIEF
**SARAH BARR**
ASSISTANT UNITED STATES ATTORNEY
1000 SW 3RD AVENUE, SUITE 600
PORTLAND, OREGON 97204
TELEPHONE: (503) 727-1000

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 4

A. The miscarriage-of-justice exception precludes all but egregious claims. ........ 4

B. The Supreme Court rejected a broad exception for constitutional claims ........ 5

C. Defendant's appeal fails to identify a miscarriage of justice. ........ 7

D. The *Wells* constitutional claims exception, and the *Atherton* expansion of it, are clearly irreconcilable with *Hunter*. ........ 9

E. This Court should dismiss defendant's appeal. ........ 13

CONCLUSION ........ 14

CERTIFICATE OF COMPLIANCE ........ 15

## TABLE OF AUTHORITIES

### Federal Cases

*Hunter v. United States,* 146 S. Ct. 1702 (2026) ........ *passim*

*Lee* v. *United States*, 582 U.S. 357 (2017) ........ 1

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) ........ 9

*Sotirion v. United States*, 617 F.3d 27 (1st Cir. 2010) ........ 8

*United States v. Adams*, 780 F.3d 1182 (D.C. Cir. 2015) ........ 8

*United States v. Adkins*, 743 F.3d 176 (7th Cir. 2014) ........ 8

*United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) ........ 12

*United States* v. *Andis*, 333 F.3d 886 (8th Cir. 2003) ........ 1, 11

*United States v. Atherton,* 106 F.4th 888 (9th Cir. 2024). ........ *passim*

*United States v. Bibler*, 495 F.3d 621 (9th Cir. 2007) ........ 10

*United States v. Booker,* 543 U.S. 220 (2005) ........ 12

*United States v. Buissereth*, 638 F.3d 114 (2d Cir. 2011) ........ 8

*United States v. Cardenas*, 405 F.3d 1046 (9th Cir. 2005) ........ 12

*United States v. Castro*, No. 24-2702, 2026 WL 2389806 (9th Cir. Aug. 17, 2026) ........ 11

*United States v. Celaya*, No. 24-6562, 2026 WL 2057415 (9th Cir. July 16, 2026) ........ 11

*United States v. Corso*, 549 F.3d 921 (3d Cir. 2008) ........ 8, 10-11

*United States v. Goodall*, 21 F.4th 555 (9th Cir. 2021) ........ 11

*United States* v. *Guillen*, 561 F.3d 527 (D.C. Cir. 2009) ........ 1

*United States v. Gutierrez*, 133 F.4th 999 (10th Cir. 2025) .................................................. 10

*United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004)...................................................... 11

*United States v. Lillard*, 57 F.4th 729 (9th Cir. 2023) ......................................................... 12

*United States v. Matos*, No. 22-1561, 2026 WL 2339567 (2d Cir. Aug. 13, 2026) ............. 8

*United States v. McGrath*, 981 F.3d 248 (4th Cir. 2020)......................................................... 8

*United States v. Meirick*, 674 F.3d 802 (8th Cir. 2012) ........................................................... 8

*United States v. Navarro-Botello*, 912 F.2d 318 (9th Cir. 1990)............................................. 1

*United States v. Nguyen*, 618 F.3d 72 (1st Cir. 2010) .......................................................... 10

*United States v. Schopp*, 938 F.3d 1053 (9th Cir. 2019) ....................................................... 12

*United States v. Soto–Cruz*, 449 F.3d 258 (1st Cir.2006) ........................................................ 8

*United States v. Teeter*, 257 F.3d 14 (1st Cir. 2001)................................................................ 1

*United States v. Wells,* 29 F. 4th 580 (9th Cir. 2022) ....................................................*passim*

**Sentencing Guidelines**

U.S.S.G. § 5G1.1(a) ........................................................................................................... 2

## INTRODUCTION

Appeal waivers in plea agreements benefit courts, the government and defendants: they reduce judicial workloads and spare the government the resources of litigating an appeal; reciprocally, they provide a bargaining chip that can improve the defendant's negotiating position and give defendants certainty tethered to the parameters of the negotiated plea terms. Appeal waivers secure the finality of criminal judgments, saving the resources required for an appeal, and discouraging meritless appeals. *See United States v. Navarro-Botello*, 912 F.2d 318, 320 (9th Cir. 1990); *United States* v. *Guillen*, 561 F.3d 527, 530 (D.C. Cir. 2009); *United States* v. *Andis*, 333 F.3d 886, 889–890 (8th Cir. 2003) (en banc); *United States v. Teeter*, 257 F.3d 14, 22–23 (1st Cir. 2001). Society shares the "strong . . . interest in finality" in criminal cases, which "has 'special force'" with respect to convictions based on a defendant's sworn admission of guilt. *Lee* v. *United States*, 582 U.S. 357, 368-369 (2017) (citation omitted). Thus, this Court has held that "public policy strongly supports plea agreements," including enforcing their appeal waivers. *Navarro-Botello*, 912 F.2d at 321.

The Supreme Court has now dictated that a valid appeal waiver "may be set aside only if the sentence is marred by the kind of egregious error that would bring the judicial system into disrepute." *Hunter v. United States,* 146 S. Ct. 1702 (2026). The standard is a "high bar" (said three times), "hard-to-meet," "rare," and appropriate only as a "safety valve" in "extreme cases." *Id.* at 1713, 1714. This Court's precedent

in this case and the decision this Court relied on, *United States v. Wells,* 29 F. 4th 580 (9th Cir. 2022), are inconsistent with this holding.

This Court should dismiss defendant's appeal and bring its waiver enforcement standard in line with *Hunter*: appeal waivers must be enforced against appeals that fall within the scope of a knowing and voluntary waiver, except in the rare case where a miscarriage of justice implicating institutional judicial harm would ensue.

**BACKGROUND**

Defendant entered into a plea agreement with the government, acknowledging that he produced child pornography. In exchange for the government's promise to dismiss several charges and resolve local charges, defendant accepted the offer and agreed to waive "any aspect of the conviction and sentence on any grounds," unless the sentence exceeded the statutory maximum or the court arrived at an advisory guideline range by imposing an upward departure under Guidelines Chapters 4 or 5K. 1-ER-116. Although his calculated guideline range was life imprisonment, the statutory maximum lowered the range to 360 months' imprisonment. 1-ER-115; U.S.S.G. § 5G1.1(a). The plea agreement contemplated that the government would recommend the statutory maximum and defendant would seek a downward variance to the 15-year mandatory minimum. *Id.*

The district court sentenced defendant to 360 months (30 years) in prison. Defendant raised no objection at the hearing. 1-ER-53–64; *United States. v. Atherton,* 106 F. 4th 888, 898 (9th Cir. 2024).

Despite his wavier, defendant appealed, claiming the court violated due process when it considered "unreliable information" at sentencing. 1-ER-128; Def. Op. Br. He did not address the waiver. *Id.* The government moved to dismiss the appeal on the waiver, or in the alternative sought affirmance on the merits. Gov't Ans. Br. at 1, 16, 17–24. In reply, defendant argued his appeal was excepted from the waiver because it raised a constitutional challenge. Def. Rep. Br. at 6–7. He does not claim the appeal waiver was not knowing or voluntary; the plea hearing transcript confirms that it was. 1-ER-78–102.

A panel of this Court unanimously rejected defendant's due process claim on the merits. *Atherton*, 106 F.4th at 901; *id.* at 902 (Miller, J., dissenting). The majority reached the merits after holding the appeal waiver did not bar it. The dissent would have "h[e]ld him to his agreement and dismiss[ed] the appeal." *Id.* at 902.

The Court then agreed to hear the case en banc. No. 21-30266, Dkt. No. 57. Following oral argument, the Court stayed its decision pending *Hunter* and thereafter ordered supplemental briefing. *Id.* at Dkt. 75, 79.

## ARGUMENT

Following the Supreme Court's decision in *Hunter*, this Court's original ruling cannot stand. *Hunter* narrows exceptions to a criminal defendant's appellate waiver to rare instances involving a "miscarriage of justice." This necessarily excludes the broad swath of constitutional claims identified in this case and in *Wells*. It also excludes defendant's unpreserved due process arguments.

### A. The miscarriage-of-justice exception precludes all but egregious claims.

Like defendant, Hunter also sought appellate review based on a claim that his sentence was unconstitutional. *Id.* at 1709. The Fifth Circuit disagreed, holding that appeal waivers are enforced unless one of two limited exceptions applies: the waiver itself was tainted by ineffective assistance of counsel, or the challenged sentence exceeded the statutory maximum. *Id.*

The Supreme Court rejected the Fifth Circuit's narrow approach to "specifying just a few discrete circumstances in which an appeal can occur despite a waiver." *Id.* at 1709–10. But it also rejected Hunter's constitutional exception. Instead, it adopted the majority circuit approach that "[t]he waiver may be set aside only if the sentence is marred by the kind of egregious error that would bring the judicial system into disrepute" thereby creating a miscarriage of justice. *Id.* at 1708, 1713.

The Court outlined the contours of a "miscarriage of justice" exception. This standard, "properly understood and applied, sets a high bar." *Id.* at 1713. "The error

must be obvious—not one a judge could reasonably make." *Id.* Rather, "it must be of the type that would undermine public confidence in the judiciary" beyond "standard fare errors in misapplying sentencing law." *Id.* Therefore, "unfortunate but inevitable" mistakes in "the mandatory consideration of multiple sentencing factors" do not cut it. *Id.* The miscarriage-of-justice exception "offer[s] a safety valve for extreme cases—a way out of a waiver when the justice system's basic integrity is at stake." *Id.* at 1713–14.

The miscarriage-of-justice exception is grounded in minimizing the "risk" of "institutional harm" to the judiciary. *Id.* at 1713. The purpose of allowing a miscarriage-of-justice exception is to tamp down "automatic enforcement," not open a door to creative waiver arguments. *Id.*

**B. The Supreme Court rejected a broad exception for constitutional claims.**

A miscarriage of justice is a far narrower standard than a constitutional challenge. The circumstances the Court described to exemplify a miscarriage of justice demonstrate this. For example, it is a miscarriage of justice to impose a sentence that exceeds the statutory maximum or a sentence that is "infected" with "blatant constitutional error" like one based on a "constitutionally impermissible factor (like race)" or that includes "a constitutionally infirm condition of supervised release (like barring a defendant from becoming pregnant)." *Id.* at 1714.

And for a procedural error to pass the threshold, not just any allegation with a constitutional bent will do. Rather, the sentence must be imposed "without some minimum of civilized procedure," like if an orangutan picked the sentence out of a hat, or if "the judge refused to hold a hearing consonant with basic principles of law." *Id.* at 1714; *see also* 1713 (describing the orangutan example). While these examples are not exclusive, the Supreme Court meant them "to illustrate the high bar a defendant must surmount to overcome an appeal waiver." *Id.* at 1714. It views the miscarriage-of-justice standard as "erect[ing] a substantial barrier" to evading an appeal waiver. *Id.* "Errors that are 'uncertain or ordinary,'" the Supreme Court instructs, "can 'be quickly dismissed.'" *Id.*

So can errors that pass without objection from any of the parties. The absence of a contemporaneous objection can and should be instructive on whether a claim falls within the Court's narrow, miscarriage-of-justice exception. If it was so obvious and egregious, someone should object. Applying such a rule will largely eliminate the need to litigate whether a claim falls within the exception and will restore the benefits to the judicial system's interest in efficiency and finality.

Defendant's reliance on the concurrence is misplaced and should not lead this Court astray. Although the concurrence of three Justices purports to identify additional examples where a miscarriage of justice might result, the majority opinion rules. *See Hunter*, 146 S. Ct. at 1715 (Gorsuch, J., concurring, joined by Sotomayor, J.

and Jackon, J.). Moreover, three other Justices concurred specifically to caution that Justice Gorsuch's concurrence "would set a lower bar for the miscarriage-of-justice exception than the Court's opinion does" and thus is not "entirely consistent with the Court's opinion," which "speaks for itself." *Id.* at 1724 (Kavanaugh, J., concurring, joined by Alito, J. and Barrett, J.).

**C. Defendant's appeal fails to identify a miscarriage of justice.**

Defendant does not argue the sentencing lacked "some minimum of civilized procedure" or that the district court "refused to hold a hearing consonant with basic principles of law." Nor could he; the sentencing judge afforded all parties every opportunity to advocate their respective positions. 1-ER-11–66. He disagrees with the substantive reasonableness of his 30-year sentence—a sentence he knew the government would be recommending—and seeks to evade this known potential outcome by shrouding his claim in procedural due process terms and asking this Court to take a path the Supreme Court has said is not there. A valid appeal waiver "may be set aside only if" its enforcement results in a miscarriage of justice, regardless of the claim's Constitution bent. *Hunter*, 146 S. Ct. at 1713. Because there was nothing obvious or egregiously wrong with defendant's sentencing (indeed, the panel found there was no due process violation at all), his waiver bars his appeal.

*Hunter* endorsed the circuit courts' existing view of the miscarriage-of-justice exception. *Id.* at 1709 n.1, 1714. That includes the First, Third, Fourth, Eighth, and

DC Circuits, which had already found that ordinary procedural errors at sentencing do not release defendants from a valid appeal waiver. *See United States v. Soto–Cruz*, 449 F.3d 258, 261 (1st Cir. 2006); *United States v. Corso*, 549 F.3d 921, 931 (3d Cir. 2008); *United States v. McGrath*, 981 F.3d 248, 250 (4th Cir. 2020); *United States v. Meirick*, 674 F.3d 802, 805–06 (8th Cir. 2012); *United States v. Adams*, 780 F.3d 1182, 1184 (D.C. Cir. 2015); *see also United States v. Buissereth*, 638 F.3d 114, 117–18 (2d Cir. 2011).

These courts describe the miscarriage-of-justice exception as "a very narrow exception." *Adams*, 780 F.3d at 1184. One that is "applied sparingly and without undue generosity," *Soto–Cruz,* 449 F.3d at 261, limited to "egregious cases," that is "demanding enough to prevent defendants who have agreed to waive their right to appeal from successfully pursuing garden-variety claims of error." *Sotirion v. United States*, 617 F.3d 27, 36 (1st Cir. 2010). This is true even when defendants deem their claims "constitutional arguments." *Meirick*, 674 F.3d at 806; *United States v. Adkins*, 743 F.3d 176, 193 (7th Cir. 2014) (there is no "general 'constitutional-argument exception' to waivers in plea agreements").

Since *Hunter*, the Second Circuit has fixed its waiver enforcement analysis to fall in line. It recognized *Hunter's* dictate that "in rare circumstances," that implicate questions about "the justice system's basic integrity," a defendant may be released from his appellate waiver when enforcement works a miscarriage of justice. *United States v. Matos*, No. 22-1561, 2026 WL 2339567, at *6 (2d Cir. Aug. 13, 2026). And it

confirmed that guideline calculation errors—a form of procedural error—are the type of "standard-fare errors" contemplated by appellate waivers and "do not implicate the miscarriage-of-justice limit." *Id.* This Court, too, should follow suit.

### D. The *Wells* constitutional claims exception, and the *Atherton* expansion of it, are clearly irreconcilable with *Hunter*.

*Hunter* "effectively overrule[s]" the *Wells* constitutional claims exception and *Atherton's* expansion of it, which are clearly irreconcilable with it. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). *Hunter* accepted that a broadly worded appeal waiver subsumes all claims unless enforcement would result in a miscarriage of justice. It did not adopt Hunter's general constitutional claims exception. Nor did it require the appeal waiver to expressly identify the constitutional claims being waived.

Although *Wells* recognized the miscarriage-of-justice standard, 29 F.4th at 583, it did not apply it as the Supreme Court instructs. Instead, it "interpreted precedent" to hold that appeals challenging a sentence's substantive constitutionality per se survive waivers that broadly preclude appeals of "any aspect" of the sentence; if the government wants to prevent such an appeal, the waiver must specially say so. *Wells*, 29 F.4th at 587; *see also* Gov't Pet. Rev. at 10–13 (discussing the faulty reliance on this precedent). The *Wells* exception is blanket; contrary to *Hunter*, it requires no nexus analysis between the alleged error and any harm to judicial integrity and requires no miscarriage of justice finding. At the same time, *Wells* recognized the precedent's

shaky foundation and invited an "en banc court [to] decide if *Bibler*[1] and its progeny should be overturned [to] adopt a new rule." *Wells*, 29 F.4th at 587, n.3.

When *Atherton* extended *Wells,* it drove this Court further away from the Supreme Court's miscarriage-of-justice standard. An all-encompassing waiver of the right to appeal "any aspect" of the sentence "on any grounds" is now per se unenforceable against *any* claim invoking the constitutionality of a sentence—substantive *or* procedural. The dissonance between this blanket exception and *Hunter's* limited miscarriage-of-justice standard is clear: the *Atherton* panel unanimously found there was no due process error; without any error, there can be no miscarriage of justice.

*Hunter* demands enforcing an appeal waiver's plain terms except in the "rare" case where an error so grievously undermines the institutional integrity of the judicial system that a miscarriage of justice would result. This en banc Court should overrule *Wells* and *Atherton* and adopt the three-step enforcement analysis used by the circuits that *Hunter* endorsed. This analysis asks: (1) whether the disputed appeal falls within the scope of the appellate waiver; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice. *United States v. Gutierrez*, 133 F.4th 999, 1008 (10th Cir. 2025); *United States v. Nguyen*, 618 F.3d 72, 74 (1st Cir. 2010); *Corso*, 549 F.3d at

---

[1] *United States v. Bibler*, 495 F.3d 621 (9th Cir. 2007).

927; *Andis*, 333 F.3d at 890–92. A motions panel can readily address this limited set of questions without requiring burdensome and likely unnecessary briefing on the merits. *See e.g., United States v. Hahn*, 359 F.3d 1315, 1328 (10th Cir. 2004).

This Court has already applied *Hunter*'s miscarriage-of-justice standard and at least implicitly applied this three-step analysis to enforce waivers against appeals that have raised constitutional and procedural claims post-*Hunter*. *See United States v. Castro*, No. 24-2702, 2026 WL 2389806, at *2 (9th Cir. Aug. 17, 2026); *United States v. Celaya*, No. 24-6562, 2026 WL 2057415, at *1 (9th Cir. July 16, 2026). It should now formally overturn *Wells's* and *Atherton's* broad "constitutional claims exception" and their demand that constitutional claims be specially waived. This Court should clarify to all parties involved in criminal cases in this Circuit: the plain terms of a knowing and voluntary appeal waiver will be enforced except in the "rare" case where enforcement works a miscarriage of justice.

This rule will bring the circuit's waiver enforcement analysis in line with *Hunter* and its sister circuits that have long applied the miscarriage-of-justice standard. It also brings the analysis back in line with this circuit's own caselaw honoring the plain terms of prospective appeal waivers. *See* Gov't Pet. Rev. at 7–9; *see also United States v. Goodall*, 21 F.4th 555, 564 (9th Cir. 2021) (resisting attempt to broadly expand implied exceptions to the appeal waiver).

Defendant points out that this Court has said that an "illegal sentence"—the provenance of the "constitutional claim exception"—"is a miscarriage of justice." Def. Supp. Br. at 12 (citing *United States v. Ameline*, 409 F.3d 1073, 1081 (9th Cir. 2005) (en banc)). But *Ameline* did not involve the scope of an appellate waiver. Moreover, unlike here, the error there implicated institutional integrity on a broad scale; the *Booker*[2] error was a "unique situation" where this Court was "left with hundreds of unconstitutional sentences pending on direct review" arising from the same error grounded in the then-mandatory-but-unconstitutional scheme. *Ameline*, 409 F.3d at 1081 n.4. This Court's choice to notice the plain error there as a miscarriage of justice does not demand the same finding here. *Cf United States v. Cardenas*, 405 F.3d 1046, 1048 (9th Cir. 2005) (finding *Booker* did not invalidate an appeal waiver because "*Booker* does not bear on mandatory minimums and because a change in the law does not make a plea involuntary and unknowing").

The other cases defendant cites also do not help him. Def. Supp. Br. at 12. *United States v. Lillard*, 57 F.4th 729, 736 (9th Cir. 2023) said it would be a miscarriage of justice not to notice the defendant's forfeited plain error when his sentence was indisputably illegal for exceeding the applicable statutory maximum. Same with *United States v. Schopp*, 938 F.3d 1053, 1058 (9th Cir. 2019), which involved "an illegal

[2] *United States v. Booker,* 543 U.S. 220 (2005).

sentence imposed in excess of a maximum statutory penalty." *Hunter* expressly makes room for this type of claim, as does the terms of defendant's waiver in this case.

Defendant does not claim an illegal sentence. He claims he should evade his appeal waiver because the court considered "informational inputs" that were, in his view, wrong or unreliable. Maintaining *Wells's* and *Atherton's* broad "constitutional claims exception" to pull this ordinary claim of procedural error out of a valid appeal waiver is inconsistent with *Hunter*.

**E. This Court should dismiss defendant's appeal.**

Defendant agreed to waive the right to appeal "any aspect of the conviction and sentence on any grounds," unless either of two express exceptions applied that do not apply here. Defendant does not claim that his waiver was not knowing or voluntary. The plea hearing confirms that it was. 1-ER-77–102. Defendant raised for the first time on appeal a procedural error, and the panel unanimously found no due process violation. The sentence was within-guidelines and consistent with the plea agreement. Enforcing his knowing and voluntary promise not to appeal "any aspect" of his sentence "on any grounds" gives both parties the benefit of their bargain and promotes rather than diminishes judicial integrity.

///

## CONCLUSION

This court should dismiss defendant's appeal.

DATED this 25th day of August, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/ Sarah Barr*
SARAH BARR
Assistant U.S. Attorney

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 21-30266

I am the attorney or self-represented party.

**This brief contains** 3,068 **words,** including ______ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ○ complies with the word limit of Cir. R. 32-1.
- ○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.
- ◉ complies with the length limit designated by court order dated July 14, 2026.
- ○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Sarah Barr **Date** August 25, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*